FLETCHER v. OLIVER, *Sheriff, &c.*

TAXATION—*rule of uniformity—exemptions.* The constitutional provision that all real property shall be subject to taxation, except certain exempted kinds therein enumerated, amounts to an inhibition on the Legislature from exempting other real property.

The Legislature could not have exempted the property within the city of Little Rock from the tax levied by the county court for the purpose of constructing roads in Pulaski county.

A provision of the city charter of Little Rock, exempting the property of the inhabitants of that city from the payment of such a tax, would be unconstitutional.

The rule of uniformity in taxation requires uniformity in the *rate* of taxation and in the *mode* of assessment. There must be an equality of burden.

The uniformity must be coëxtensive with the territory to which it applies, whether it be the State, a county, township, city, town, or district.

CITY CHARTER OF LITTLE ROCK—*39th section.* The 39th section of the charter of the city of Little Rock, providing that "the inhabitants of the city are exempt from working upon any road beyond the limits of the city, and from paying any tax to procure laborers to work on the same," applies only to the *inhabitants* of the city, and not to *non-resident* property owners, and the exemption is of a *personal* nature.

The 39th section of the city charter, and the State statute of 1868 for "opening and regulating roads and highways," which provides for levying a county road tax on the taxable property of the county, *are not inconsistent* with each other.

ROADS AND HIGHWAYS—*taxes therefor.* Under the title, "An act for opening and regulating roads and highways," may be included every act necessary to carry that design into effect.

19

Money, in this act, is placed in the same class of adjuncts for building roads and highways as timber, stone, gravel and labor are, and as such, is not revenue in the constitutional sense.

The road act of 1854–5 is not repealed by the act of 1868, and of itself would legalize the road tax in question.

The road act of March 2, 1867, has no application to Pulaski county.

CONSTITUTIONAL LAW. The clause of the Constitution requiring each act of the Legislature to embrace but one subject, which must be expressed in the title, was designed to prevent the passage of what are known as omnibus bills.

A constitutional grant of power carries with it the right to exercise the means to carry the power into effect.

REVENUE LAWS. The constitutional provision requiring bills for raising revenue to originate in the lower branch of the Legislature, does not apply to the act of 1868.

*Appeal from Pulaski Chancery Court.*

Hon. T. D. W. YONLEY, Chancellor.

WATKINS & ROSE, RICE & BENJAMIN, for appellant.

The inhabitants of Little Rock are exempt from the county road tax. *Acts* 1866, *p.* 34.

To the act of July 16, 1868, which it is said repeals the act on which we rely, we make the following constitutional objections:

1. It was a revenue bill, and originated in the Senate. *Const., Art.* 5, *sec.* 19.

2. The act embraces more than one subject not included in its title. *People v. Millen*, 32 *Ill.*, 181 ; *Hedges v. Rennaker*, 3 *Metc., (Ky.,)* 257 ; *Childs v. Monroe*, 4 *id.*, 75 ; *Williams v. Payson*, 14 *La. An.*, 7 ; *Bonnier v. Steele*, 13 *id.*, 433 ; *Wilkins v. Miller*, 9 *Ind.*, 100 ; *Tobey v. State, id.*, 363 ; *Gillespie v. State, id.*, 380 ; *Rogers v. State*, 6 *id.*, 31 ; *Davis v. State*, 7 *Md.*, 151 ; *Cannon v. Hemphill*, 7 *Texas*, 184 ; *Mayor v. State*, 4 *Ga.*, 26 ; *Laner v. State*, 22 *Ind.*, 461 ; *Kuhus v. Krammis*, 20 *id.*, 490 ; *Supervisors v. Heenan*, 20 *Min.*, 330 ; *Mewherter v. Price*, 11 *Ind.*, 199.

But, admitting the validity of the last act, it does not repeal the former. Implied repeals are not favored, and a general statute does not repeal a special statute by implication. *Baker v. Milwaukee*, 14 *Iowa*, 214; *Luke v. State*, 5 *Fla.*, 185; *Beridon v. Barbier*, 13 *La. An.*, 458; *Mobile, &c., v. State*, 29 *Ohio*, 573; *Cass v. Dillon*, 2 *Ohio, N. S.* 607; *Haywood v. Mayor, &c.*, 12 *Ga.*, 404; *Town of Altoona v. Lasalle*, 12 *Ill.*, 339; *McRae v. Wessell*, 6 *id.*, 153; *McFarland v. State Bank*, 4 *Ark.*, 410.

The Legislature may grant exemptions from taxation. *State v. Crittenden county*, 19 *Ark.*, 368.

The clause in the Constitution, as to uniformity of taxation, applies only to the State tax, and not to taxes for local purposes. *Washington v. State*, 13 *Ark.*, 752.

W. I. WARWICK, and GALLAGHER & NEWTON, for appellee.

The county court has jurisdiction over the streets of the city of Little Rock, concurrent with the mayor and aldermen, the control delegated to the city not being exclusive. *Baldwin v. Green*, 10 *Mo.*, 410; 9 *Mo.*, 526; *People v. High Com.*, 15 *Mich.*, 347.

The exemption in the city charter applies only to eight days' labor imposed on the citizen by statute, and not to property tax, the two being distinct. 9 *Cowan*, 437; 15 *Johnson*, 358; 3 *Barb.*, 439.

The tax is levied for building bridges, and the term "highway" does not import a bridge. Acts. granting special privileges must be strictly construed. *Angell on Highway*, sec. 40 and notes; *Blackwell on Tax Titles*, 478, 483; 2 *Black.*, 722; 12 *Wheat.*, 438; 12 *Johns.*, 290; 10 *Wend.*, 547.

Subsequent statutes, making different provisions, repeal former ones. 7 *Johns.*, 477; 4 *Cow.*, 556; 11 *Wend.*, 329; 16 *Barb.*, 547.

"Laws shall be passed taxing by a uniform rule," etc. *Art.* 10, sec. 2, *Const. See* 5 *Ohio. State Rep.*, 589.

In this regard the Constitutions of Ohio and Arkansas are

alike, and the principle of construction of a statute and a Constitution are the same; that is, where a State has adopted a clause of the Constitution of another State, which clause had received a judicial interpretation by the courts of that State, it is presumed to have been adopted with its interpretation. 3 *Scam.*, 288 ; 2 *Peters*, 1 ; 13 *Ill.*, 15.

The road law of 1868 is not a revenue law. *Harper v. Town of Elberton*, 23 *Ga.*, 570. Neither does it violate sec. 26 of Art. 5, of the Constitution. *People v. Mahoney*, 13 *Mich.*, 481. An unconstitutional act does not repeal a former one. 14 *Mich.*, 285 ; 26 *Ala.*, 165 ; 11 *Wis.*, 51.

McCLURE, J.

Fletcher, on behalf of himself and all other tax-payers of the city of Little Rock, filed his bill in the Pulaski chancery court, praying for a perpetual injunction restraining Oliver, as ex-officio collector of taxes, and all his deputies, from attempting to or collecting a certain road tax assessed and levied by the county court of Pulaski county, on the property in said county, lying within the limits of the city of Little Rock.

Fletcher alleges that said injunction ought to be granted on the following grounds:

First. That said road tax is levied without authority of law, and in violation of the 39th section of the charter of the city of Little Rock, which declares that "the inhabitants of Little Rock are hereby exempted from working upon any road beyond the limits of the city, and from paying any tax to procure laborers to work upon the same."

Second. That the act of July 16, 1868, is unconstitutional, because said law was not passed in the manner prescribed by the Constitution, in this: that said law is a revenue law, and that the Constitution requires that all revenue bills must originate in the House of Representatives, whereas the act complained of originated in the Senate.

The defendant, Oliver, answers and denies that the property of the inhabitants of the city of Little Rock is exempt from

the payment of the road tax complained of, and asserts that the law of 1868, under which he presumes the tax was levied, is not, in his opinion, unconstitutional, and that he will collect said tax from complainant and others, if not restrained from so doing.

The Chancellor, upon hearing, dismissed the bill of Fletcher with costs, and it is from this decree he appeals to this court.

Section 16, of article 15, of the Constitution of Arkansas declares:

"All laws of this State, not in conflict with this Constitution, shall remain in full force until otherwise provided by the General Assembly," etc.

It therefore becomes proper to inquire whether the law, that these parties rely upon for protection, is in harmony with this clause of the Constitution; and, in doing so, art. X., sec. 2, of that instrument is called to our attention, which reads as follows:

"Laws shall be passed, taxing, by a uniform rule, all moneys, credits, investments in bonds, joint stock companies, or otherwise, and also all real and personal property, according to its true value in money; but burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, shall never be taxed; * * * but the General Assembly may exempt from taxation personal property to the value of five hundred dollars to each tax-payer."

Under the former Constitution, all laws that exempted property of the community from taxation received a strict construction, because all such laws are in derogation of equal rights.

The 39th section of the charter of the city of Little Rock declares that "the inhabitants of Little Rock are hereby exempted from working upon any road beyond the limits of the city, and from paying any tax to procure laborers to work on the same."

The complainant alleges that the words "and from paying any tax to procure laborers to work on the same," exempts

himself and all other inhabitants of the city from any tax levied by the county court for the purpose of constructing roads and highways within the county of Pulaski.

If the complainant puts the proper construction on the meaning of these words, it then becomes us to inquire whether there is a conflict between this clause of the charter and that provision of the Constitution that says "laws shall be passed taxing, by a uniform rule, *all* moneys, credits, investments in bonds, joint stock companies, or otherwise, and *all* real and personal property, according to its true value in money, etc.; but burying grounds, etc., shall never be taxed."

Now, in the clause of the Constitution just cited, it is *declared* that *all* real and personal property shall be taxed, subject, however, to the condition that the Legislature may exempt $500 to each tax-payer.

It will be observed that there is a radical change between the old and the present Constitution on the subject of taxation. Under the old Constitution, the *Legislature* was clothed with power to designate what species of property should be taxed; they could exempt the entire real property of the State from taxation, and collect the revenue from the personal property; they could have exempted the entire personal property of the State, and placed the burden of furnishing revenue on the real property. Not so with the present Constitution. It *declares* to the Legislature that *all* real property, except "burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, property used exclusively for any public purpose," shall be taxed by one uniform rule. It declares to the Legislature that "*all* moneys, credits, investments in bonds, joint stock companies, or otherwise, and all personal property," except such an amount, less than $500, as the Legislature may determine upon, shall be taxed by a uniform rule."

The declaration that *all* real property, except certain kinds held for charitable and public purposes, specifically enumerated, amounts to an inhibition on the Legislature from exempting

other real property from taxation. Again, the Constitution, in relation to personal property, limits the amount to $500, that may be exempted, which precludes the idea that any other or further exemption would be made. The imperative command of the Constitution is, that the Legislature shall tax, by a uniform rule, *all* property except that specifically enumerated as being exempt from tax by the express terms of the Constitution.

Now, what would the complainant have this court do? Exempt his and all other property within the limits of the city of Little Rock from the payment of a tax levied by the county court of Pulaski county? The Legislature could not have made the exemption, if they had so desired, because of the plain provision of the Constitution. If the 39th section of the charter had, in express terms, exempted the *property* of the inhabitants of the city of Little Rock from the payment of this tax, such an exemption would have been a gross violation of the Constitution; and all the presumptions, that laws of a special character are not repealed by general statutes, would not have stayed the irrepressible march of the tax gatherer from crossing the imaginary line of the city and demanding the wherewith to aid in " opening the roads and highways" of Pulaski county. The mandatory terms of the Constitution is, that *all* property shall be taxed, and this command can not be evaded by indirection or circuity.

" *Taxing by a uniform rule*," means by one and the same unvarying standard; uniformity not only in the *rate* of taxation, but uniformity in the *mode* of assessment, by which the value is ascertained. There must be an equality of burden. This uniformity must be coëxtensive with the territory to which it applies. If a State tax, it must be uniform all over the State; if a county, township, city, town or district tax, it must be uniform throughout the extent of territory to which it applies; the property within these legal subdivisions, established by law for the convenience of the people, must all pay homage to this one uniform rule. Each one of these subdivisions grew

into existence to supply a want in society, or to afford protection to property and the owner, and to the support of each. The Constitution proclaims the owners shall contribute.

Admitting, for the purpose of elucidation, the meaning contended for by the complainant, and the result is, that the property of a portion of the tax-payers of Pulaski county is exempted from taxation. The inhabitants of Little Rock are none the less inhabitants of Pulaski county.

The complainant states that his property is within the county of Pulaski, and so being, must come under the "uniform rule" by which one inhabitant or tax-payer is required to pay the same rate per cent. on each one dollar's valuation that another is.

Let us further examine the 39th section. Now, mark what it says: "The *inhabitants* of the city are exempt from working upon any road beyond the limits of the city, and from paying any *tax* to procure *laborers* to work on the same."

It is claimed that this section exempts the property of inhabitants within the limits of the city of Little Rock from this tax. Now, let us apply the test. Suppose a non-resident property owner and tax-payer, owning property within the city of Little Rock, had been the complainant, instead of an inhabitant in the present proceeding. With what effect could he plead the 39th section as an exemption? Is there an intelligent lawyer any where that would not reply that this law was only for the benefit of the "*inhabitants*," and had no application to or benefits to confer on the mere owners of property? It is conceded, then, a non-resident tax-payer, owning property within the city, could not derive any benefits, protection, or exemption from this act.

Is this "taxing by a uniform rule," where the "*inhabitant*" is relieved from a tax on his property and the non-resident is not? The Legislature never presumed that they were making any such discriminations when they passed the law, nor did they. It is self-evident that the "tax," referred to in the law under consideration, was upon the "inhabitant"—*not on property ;* that the Legislature designed to relieve the inhabitant from.

Under the original charter of the city, passed November 1835, by the 9th section of the act of incorporation, "the inhabitants" of the city were exempt from working on *county roads.* It will be observed that both these exemptions were confined to the "inhabitants," and therefore must have been of a personal nature. In 1866 the charter of the city was amended, and the words "*county road*" left out, and the words "*any road*" were placed in lieu thereof. The road law in force at the time (1866) recognized "military roads" as a separate class of roads from "county roads;" and we are led to presume that the word "any" was placed in the amended charter, instead of the word "county," to the end that there should be no further cavil about the inhabitants being subject to work on any road outside the city, or pay commutation therefor. The law required labor from the inhabitant on the roads and highways. This labor could be commuted by paying the overseer two dollars per day. In time this demand for labor was regarded by the people as a "tax," which went to pay other laborers for performing the labor, and this is the "tax" that the Legislature designed the inhabitants of Little Rock should be exempt from paying. Having, as we think, disposed of this branch of the case, we will now proceed to examine the law of 1868, which it is alleged is unconstitutional, and in conflict with the charter of the city.

We are advised that general laws do not repeal special laws by mere implication. This fact is admitted, but we think that there is no conflict between the laws. The one provides for levying a county road tax on the *taxable property* of the county, the other for the exemption of the *inhabitants* of the city of Little Rock from performing labor, or paying any commutation therefor, on any of the roads outside of the limits of the city.

The first constitutional objection is, that the act embraces more than one subject in the same title.

The title of the act is for "opening and regulating roads and highways." Under this title may be included every act necessary to carry into effect or accomplish the design. The

object of this clause was to prevent combinations, by which various and distinct subjects of legislation should gain support, which they could not if presented separately.   Is there a power conferred, or a duty enjoined, by any of the sections of the law of 1868, which, if left out, would not have retarded and delayed the construction of roads and highways?   In order to have a perfect system of roads and highways, road districts, overseers, timber, stone, gravel, labor and money would be required.   Now, here are seven separate and distinct things or subjects that must be employed to accomplish the "opening and regulating roads and highways."   Now, the complainant contends that, under the provisions of the Constitution, seven separate and distinct acts of the Legislature must be passed to accomplish this one purpose.

It is claimed that bridges are not a necessary part of a highway; that building bridges and making roads and highways are separate and distinct acts, and so repugnant to the Constitution that the law must be declared a nullity.   We have before stated that, in our opinion, the clause under consideration, Art. V., sec. 22, was intended to prevent the Legislature from passing what are commonly known as "omnibus bills."   Now the mere fact that "bridges" happened to be enumerated as among the necessary adjuncts of a highway, does not, in our opinion, render this law open to any such charge, any more than the fact that the fees of certain officers are therein prescribed.   It could be claimed with equal gravity that the law is unconstitutional because it prescribes the fees of certain officers, and that that fact is not expressed in the title.

It is the bounden duty of courts not to defeat the will of the people, expressed through their representatives in the legislative halls, unless it is clearly manifest that some vested right or provision of the Constitution has been invaded.   If the validity of every law is to depend upon the mere fact that the judiciary, if they had been legislating, would not have so arranged the law, we think that the Constitutional Convention reposed more confidence in the judicial department than sound discretion would warrant.

We are not prepared to say that cases might not arise, and we have indicated them, in which we should not hesitate to declare a law unconstitutional. To hold otherwise would be an encouragement to inferior courts to assume to pass upon the fact as to whether a law contained more than one subject, and whether that one subject was clearly expressed in the title; endless litigation, without any practical benefits, would be the result of such a course.

Is this act of 1868, under consideration, a "revenue bill?" Webster defines revenue to mean "the annual produce of taxes, excise, customs, duties, rents, &c., which a nation or State collects and receives into the treasury for publicuse."

The law under consideration authorized the levy of a tax to build bridges and roads. The title of the act was "An act opening and regulating roads and highways." Can a bridge become a necessary part of a highway? If it can, then this is not a revenue law. It is a well settled principle of the law that whenever the Constitution grants a power, that it also grants the means by which it can be carried into effect. To construct roads and highways, money, in the opinion of the Legislature, was necessary. The complainant entertains a contrary opinion, and says, stop! this law, authorizing the opening of roads and highways, became unconstitutional the very moment that it provided for a tax to carry the law into full effect, because money constitutes revenue.

Labor produces money; the timber, stone and gravel used in the construction of the road may be converted into money. It requires money to procure the labor, timber, stone and gravel that may be used in the construction of the roads. If one should contract with another for the building of a public road or highway from here to Hot Springs, over which the public could travel by the ordinary means of conveyance, we should expect the ravines and streams between here and that point to be placed in such condition, by bridging or otherwise, as would render the crossing as free from all danger as any other portion of the road.

Money, in this instance, is placed in the same class of adjuncts for building roads and highways that timber, stone, gravel or labor may be, and, as such, is not revenue, in the sense in which the word is used in the Constitution. The revenue there referred to was such as might be imposed for the support of the State Government, and the payment of its ordinary expenses.

There are many laws that provide for raising money by taxation that are not revenue laws. The law under which the city derives the power to tax the property within its limits, originated in the Senate. The law organizing schools, and permitting the levy of a tax for that specific purpose, originated in the Senate, and no one ever dreamed of calling them revenue laws.

Then, again, this tax does not depend on the law of 1868 alone for support, because the law of 1854–5 authorizes the same rate per cent. upon the taxable property of the entire county. The law of 1854–5 is not repealed, by implication or otherwise, and, in the event we should have held the law of 1868 void for either of the reasons urged, we should have been compelled to have sustained the levy of road tax under the law before mentioned.

The law of March 21, 1867, to which our attention has been called, as sustaining this levy of road tax, in the event the road law of 1868 should not be sustained, has no application to Pulaski county. The act simply amends chapter 149 of Gould's Digest, and the law, as there found, did not apply to the counties of Jackson, Crawford, Pope, Lafayette, Phillips, Crittenden, Monroe, Columbia and Pulaski.

It is not necessary to discuss what effect the repeal of the charter of the city of Little Rock might have had in the disposition of this case.

We are of opinion that the decree of the Chancellor should be affirmed, and it is so ordered.