The State *v.* Young.

————•————

## THE STATE *v.* YOUNG.

CONSTITUTIONAL LAW.—*Punishment of Drunkenness.*—The subject-matter of the ninth section of the act to regulate the sale of intoxicating liquors, etc., approved February 27th, 1873 (Acts 1873, p. 151), providing for the punishment of persons found intoxicated, is not expressed in the title of the act, nor is it properly connected with the subject expressed in the title, and said section is therefore unconstitutional and void. BUSKIRK, J., and DOWNEY, C. J., dissented.

From the Shelby Circuit Court.

*J. C. Denny,* Attorney General, *K. M. Hord,* Prosecuting Attorney, *A. J. Higgins,* and *Gordon, Browne & Lamb,* for the State.

The State *v.* Young.

*A. Blair,* for appellee.

WORDEN, J.—This was a prosecution against the appellee, originating before a justice of the peace, for being found in a state of intoxication, in violation of the ninth section of the act to regulate the sale of intoxicating liquors, etc., approved February 27th, 1873 (Acts 1873, p. 151). On appeal of the cause to the circuit court, the affidavit was quashed, and the State excepted.

The question presented relates alone to the validity of the section of the statute above mentioned. It provides, that " it shall be unlawful for any person to get intoxicated. A person found in a state of intoxication shall upon conviction thereof, be fined in the sum of five dollars," etc.

The title of the act is as follows :

" An act to regulate the sale of intoxicating liquors, to provide against evils resulting from any sale thereof, to furnish remedies for damages suffered by any person in consequence of such sale, prescribing penalties, to repeal all laws contravening the provisions of this act, and declaring an emergency."

Section 19 of article 4 of the constitution is as follows:

" Every act shall embrace but one subject and matters properly connected therewith ; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The question arises, whether the matter embraced in the section of the statute quoted is expressed in the title of the act, or is properly connected with the subject expressed. This leads to the inquiry, what is the subject expressed in the title ? It is quite clear that the subject is the sale of intoxicating liquors. If the act bore a more general title, indicating that the subject was intoxicating liquors in the abstract, such as " an act concerning intoxicating liquors," no reason is perceived why legislation inhibiting the excessive use of them might not be within the title. If it could

be deduced from what is set forth in the title that the subject of the act was intoxicating liquors, the case would be much like those of *Bright* v. *McCullough,* 27 Ind. 223, and *Shoemaker* v. *Smith,* 37 Ind. 122.

But it is impossible to deduce from the title the general subject of intoxicating liquors. The entire title points to the sale of intoxicating liquors, and nothing else, as the subject of the act. It is clear, therefore, that the intemperate use of such liquors is a matter not expressed in the title. This may be illustrated. Suppose that, under the same title, an act had been passed entirely prohibiting the manufacture of intoxicating liquors within the limits of the State. The subject of the act, as expressed in the, title, would be the sale of intoxicating liquors, while the enactment itself would prohibit their manufacture. It would scarcely be claimed, in such case, that the enactment would be within the title. No one would look for such legislation under such a title. There seems to be no material difference in principle between the case supposed and the one before us.

Again, suppose that there was no other provision in the act than that contained in the ninth section. We should then have an enactment making it an offence to be found intoxicated, under a title specifying as the subject thereof the sale of intoxicating liquors. If the section could not thus stand alone, under the title it must fall; for it derives no support from the other enactments. They cannot bring it within the title of the act.

We have thus far been considering whether the matter of the section is expressed in the title of the act. We are clearly of the opinion that it is not. It remains to inquire whether it is properly connected with the subject expressed. It may here be observed that wherever there is doubt on this subject, the doubt should be thrown in favor of the action of the co-ordinate department of the government, and the law should be sustained. But, on the other hand, when it plainly appears to the judicial mind that the matter of an enactment is neither embraced in, nor properly connected

with, the subject expressed in the title, it becomes an imperative judicial duty to hold the enactment void.

On the point now under consideration, we have no doubt. Under a title which indicates legislation only on the subject of the sale of intoxicating liquors, is found a provision in relation to their consumption, making it a penal offence to be found in a state of intoxication. It will be observed, that under the enactment no sale of liquors, either in accordance with, or in contravention of, the other provisions of the act, constitutes any ingredient or condition of the offence. The manufacturer or other person, who is found intoxicated upon liquor which has never been made the subject of sale, is guilty of an infraction of the law equally with him who is found intoxicated upon liquor which has been made the subject of sale under the law. In short, under a title professedly on the subject of the sale of intoxicating liquors merely, the legislature have attempted, without reference to any sale, to make simple drunkenness a crime.

Admitting that intoxication is so connected with the sale of intoxicating liquor, that, under a title to provide against evils resulting from any sale of such liquor, drunkenness might be declared to be a crime, it does not follow that the section under consideration is properly connected with the subject expressed in the title of this act. The evil provided against by the section is intoxication generally, without regard to the manner of acquiring the liquor by which it is produced, whilst the title includes only such evils as result from sales. The title does not include or indicate any legislation not connected with the sale or disposition of intoxicating liquor. No enactment, therefore, under the title declaring intoxication to be a crime can be valid, except upon the theory that it results from a sale of such liquor, which must appear in the enactment.

It seems to us, therefore, that the matter of the section is not only not properly connected with the subject expressed in the title, but is entirely foreign to it. There are several cases in our reports that illustrate this branch of the question,

and sustain the view which we take of it. The following may be referred to, without occupying space for details: *The State* v. *Wilson*, 7 Ind. 516; *Foley* v. *The State*, 9 Ind. 363; *Gillespie* v. *The State*, 9 Ind. 380; *Mewherter* v. *Price*, 11 Ind. 199; *The State* v. *Bowers*, 14 Ind. 195; *Igoe* v. *The State*, 14 Ind. 239; *Spaugh* v. *Huffer*, 14 Ind. 305; *Grubbs* v. *The State*, 24 Ind. 295.

The case that comes nearest to the support of the section under consideration is that of *The State* v. *Adamson*, 14 Ind. 296, where it was held, that under the title, "an act to regulate and license the sale of spirituous," etc., "liquors," etc., a provision punishing the giving away, etc., was properly connected with the subject expressed in the title. There it was made an offence to sell, barter, or give away any intoxicating liquor to a minor. Although the word "sale" only was mentioned in the title, it was held, that giving away was properly connected with the subject expressed. The court say : " When we consider the object for which such a law was passed, viz., to prevent abuses that might flow from the unrestrained disposal of liquors in these respects, it would seem that the giving away, under circumstances which might produce the same evil results as the selling, would be a matter properly regulated in connection with the selling. Indeed, it may be regarded as a necessary incident to a statute regulating the sale, to secure its efficient operation. It is a necessary precautionary provision to prevent evasion of the prohibition to sell."

It would seem from the observation of the court, that the object of the law was "to prevent the abuses which might flow from the unrestrained disposal of liquors," that the word "sale," as used in the title, might have been regarded as used in a sense broad enough to cover a disposal of liquor by way of barter or gift.

But, however this may be, under the title to that act, it was legitimate to frame a law to punish selling to minors. The giving of liquor to minors, it was thought, had a proper connection with the subject of selling. Both the sale and

the gift involve the idea of a disposal of the liquor. They both involve the idea of furnishing it to the minor, and vesting the title in him. In the one case, there is a consideration for the transfer ; in the other, none. But the substance of the thing, the evil to be avoided, is the same in both cases,. viz., the furnishing of intoxicating liquors to minors.

While that case goes, perhaps, to the verge of tenable ground, it falls quite short of meeting the case under consideration. Here the offence defined and punished by the ninth section of the act has no connection whatever, as before observed, with the subject expressed in the title, but is. wholly foreign to it. The section is, therefore, unconstitutional and void.

The judgment below is affirmed.

BUSKIRK, J., and DOWNEY, C. J.—Being unable to concur in the opinion of the majority of the court in the present case, and the case being one which involves not only a construction of the constitution, but a question of great importance to the public, we deem it to be our imperative duty to state, at length, the ground and reasons for our dissent.

We proceed to the consideration of the question, whether the ninth section of the act under examination is void by reason of being in conflict with the nineteenth section of article 4 of our state constitution. The section of the constitution which is supposed to have been violated is set out in the opinion of the majority of the court, but only a part of the ninth section is set out. The entire section is as follows :

"Sec. 9. It shall be unlawful for any person to get intoxicated. A person found in a state of intoxication shall upon conviction thereof, be fined in the sum of five dollars. Any person convicted of intoxication shall be required upon the trial to designate the person or persons from whom the liquor, in whole or in part, was obtained. In default of so designating such person, he or she shall in addition to the fine above mentioned, and as a part of his or her punishment for the

offence, be imprisoned in the county jail not less than one day nor more than ten days, at the discretion of the court."

A correct understanding of the objects sought to be accomplished, and the mischiefs intended to be remedied, by the section of the constitution in question, may aid us in arriving at the true construction of such section. This court, in *Grubbs* v. *The State.* 24 Ind. 295, has very clearly declared what mischiefs were intended to be remedied by the framers of the constitution. The court say: " We have recently had occasion, in three cases (*Reams* v. *The State*, 23 Ind. 111, *Robinson* v. *Skipworth*, 23 Ind. 311, and *Hingle* v. *The State*, 24 Ind. 35), to consider the scope and application of section 19, article 4, of the constitution. Thinking that the time had come when some rule ought to be declared which might be capable of somewhat general application in the interpretation of the clause in question, we took pains, in the two cases last mentioned, to declare what we deemed to be the mischiefs of our legislation which it was intended to prevent. One of them was stated to be the enactment of laws under false and delusive titles, whereby measures had procured the support of legislators, who were thus deceived as to the character of the laws ; and another was deemed to be the conjunction, in one act, of two or more subjects having no legal connection, for the purpose of procuring the passage of laws which might not, alone, command legislative sanction, upon the strength of popular measures embraced in the same act. To prevent these tricks in legislation, the constitution absolutely, and in all cases, forbids the passage of any law, unless the subject of it be expressed in its title, and, in like manner, inhibits the embodying in the same act of two or more subjects, having no legal connection with each other."

It is a settled rule, that in interpreting a clause in the constitution the court should look to the nature and objects of the particular powers, duties, and rights in question, with all the lights and aids of contemporary history, and give to the words of each provision just such operation and force,

consistent with their legitimate meaning, as will fairly secure and attain the end proposed. *Gibbons* v. *Ogden*, 9 Wheat. 1 ; *Prigg* v. *The Commonwealth of Pennsylvania*, 16 Peters, 539.

This court, in *Shoemaker* v. *Smith*, 37 Ind. 122, in placing an interpretation upon the clause in question, laid down a very just and equitable rule by which we should be governed. The court say : " Some liberality must be allowed in the construction of the language employed to express the title ; otherwise many valuable and beneficial acts of legislation, which have stood unquestioned for years, must fall to the ground, and the constitutional provision which was intended to remedy an evil will itself become a source of unmitigated evil."

Keeping in view the end proposed, and the foregoing rules of construction, we approach the examination of the question involved with profound deference to the views expressed by a majority of the court, and duly impressed with the importance of the question presented for our decision.

We entirely concur in the opinion of the majority of the court, that the matter embraced in the ninth section is not expressed in the title of the act, but we will endeavor to show that it is properly connected with the subject expressed.

The majority of the court arrived at the conclusion that the subject expressed in the title of the act was the sale of intoxicating liquors, and the question arises whether under such a title it was competent for the legislature to define and prescribe punishment for the offence of being found in a state of intoxication. Is intoxication so connected with the sale of intoxicating liquors as that a section on that subject may be properly included in the act? Intoxication is one of the evils resulting from the sale of intoxicating liquors. It is true that it is not always, nor perhaps generally, the result of a sale of intoxicating liquors. But, generally, where there is intoxication there has been a sale of intoxicating liquor; but this is not always the case, for intoxication may result from the use of liquors not obtained by purchase.

The purpose of the act, as expressed in the title, was not only to regulate the sale of intoxicating liquors, but also "to provide against evils resulting from any sale thereof," etc. Inasmuch as intoxication generally results from the sale of intoxicating liquors, it would seem that to prohibit and punish intoxication was to provide to some extent against the evils resulting from the sale of such intoxicating liquors. The subject-matter of an act should be reasonably specific. It should be such as to indicate some particular branch of legislation, as a head under which the particulars of the act might reasonably be looked for. The constitution only requires that a proper subject of legislation shall be expressed in the title, and not the particular features and details of the law. If the details of the act have a legal connection with the primary and substantive subject of the act, as expressed in the title, it satisfies the constitutional requirement.

This court has in many instances been required to place a construction upon the constitutional provision in question. We deem it necessary to make a brief review of a few of these adjudged cases, for the purpose of showing that the ninth section of the act in question is properly connected with the principal subject expressed in the title.

The title of the act incorporating the Bank of the State is, "an act to establish a bank, with branches." The first section of article 10 of the constitution requires that "the General Assembly shall provide by law for a uniform and equal rate of assessment and taxation," etc. The legislature had passed a general law in relation to assessment and taxation.

This court, in *The Bank* v. *The City of New Albany*, 11 Ind. 139, held, that a section in the charter of the bank, prescribing the extent and manner of taxing the bank was so connected with the subject expressed in the title as to be constitutional.

It is shown in the opinion of the majority, that this court, in *The State* v. *Adamson*, 14 Ind. 296, held, that under a title

to regulate and license the sale of spirituous liquors, etc., a section making it an offence to barter or give away intoxicating liquors, etc., had such a legal connection with the general subject expressed in the title as rendered such section valid.

The last clause of the title of the liquor law of 1859 is, "and prescribing penalties for violation thereof." The fourteenth section of that act conferred upon the circuit and common pleas courts jurisdiction to hear and determine all complaints for the violation of any of the provisions of such act.

This court, in *Thomasson* v. *The State*, 15 Ind. 449, held, that such section was properly connected with the general subject mentioned in the title, and that it was competent not only to create an offence, but to confer jurisdiction upon the courts named to hear and determine all such complaints, although there was nothing in the title in relation to the jurisdiction to try such offences.

The opinion in the above case, in *Lauer* v. *The State*, 22 Ind. 461, was, by a *per curiam* opinion, overruled; but in the subsequent case of *Reams* v. *The State*, 23 Ind. 111, the opinion in 22 Ind. was overruled, and the doctrine announced in the case in 15 Ind. was reasserted, and such ruling has been adhered to in several subsequent cases.

In *Reed* v. *The State*, 12 Ind. 641, the nature of the amendment was set forth in the title to the amendatory act, viz., "so as to extend the jurisdiction of said court in certain cases." It was held, that the subject-matter of the statute amended was the jurisdiction of the court, and that the title to the amendatory act was sufficient to sustain an enactment giving the court jurisdiction in criminal cases.

The title of the act in reference to justices of the peace is, "The election and qualification of justices of the peace, and defining their jurisdiction, powers, and duties in civil cases."

The sixty-seventh section of said act prescribes the manner in which and the rules by which an appeal from a justice shall be tried in the circuit or common pleas court; and the seventieth

section of said act regulates the costs on appeal in the circuit and common pleas courts; and yet these sections have been held to be properly connected with the subject expressed in the title of the act. *Robinson* v. *Skipworth*, 23 Ind. 311 ; *Grubbs* v. *The State*, 24 Ind. 295 ; *Hingle* v. *The State*, 24 Ind. 35.

In *Brandon* v. *The State*, 16 Ind. 197, the title of the act, the validity of which was called in question, was "an act to authorize the formation of new counties, and to change county boundaries." In the body of the act was a section providing when and where the circuit courts should be held, and prescribing the powers and jurisdiction of such court. This court held, that such section was properly connected with the subject expressed in the title.

In *Bright* v. *McCullough*, 27 Ind. 223, the title of the act was " an act providing for the election or appointment of supervisors of highways, and prescribing certain of their duties, and those of county and township officers in relation thereto." The twentieth section of the act provided that the township trustee, with the concurrence of the board of county commissioners, shall assess annually a road tax of not more than fifteen cents on the one hundred dollars, etc. It was. held, that the provisions of said section were properly connected with the subject expressed in the title of the act, which subject was "highways."

In *The Greencastle, etc., Co.* v. *The State*, 28 Ind. 382, the title of the act was " an act to amend the act entitled 'an act authorizing the construction of plank, macadamized and gravel roads, and to empower the same to make sale of a portion of their roads.'" In the body of the act was a section in which the time for the completion of such roads was extended. It was insisted that under a title which authorized a sale of such roads, there could not be a section which provided for an extension of the time for the completion of such roads; but this court held that it was properly connected with the subject expressed in the title.

This court, in *Shoemaker* v. *Smith*, 37 Ind. 122, in speaking

of the title of the act providing for the distribution of the sinking fund, say : "There can be no exact standard of certainty erected, by which to test the sufficiency of the expression of the subject. We quote, as in point, and as expressing views in which we fully concur, the following passage from the opinion of the court in the case of *Bright* v. *McCullough*, 27 Ind. 223 : 'The constitution does not assume to divide the general scope of legislation, and classify the parts under particular heads or subjects, but, of necessity, has left that power to be exercised by the legislature, as it, in its wisdom and discretion, shall deem proper. The constitution assumes that different subjects of legislation do exist, and requires that each act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. The purposes of the provision, in view of the evils intended to be guarded against, can only be effected by requiring that the subject expressed should be reasonably specific, or, in other words, should be such as to indicate some particular branch of legislation, as a head under which the particular provisions of the act might reasonably be looked for.'"

STUART, J., in his dissenting opinion in the case of *Beebe* v. *The State*, 6 Ind. 501, 553, in speaking of the title of the act, says : " As the act under examination has a general design to which all its parts have an appropriate relation, it seems clear that it is not liable to this objection. This view is sustained by the uniform action of the legislature, since the adoption of the constitution, as will abundantly appear by reference to the various enactments of the present code, a few of which may be noticed. In the title of the act organizing this court, nothing is said about the time its terms shall be held, the occupancy of rooms assigned to the judges, the appointment of a Chief Justice, or the power of the judges to hold circuit courts, all of which are contained in the act, and each of which might be regarded either as an independent subject, or as appertaining to some other. The

act for the appointment of the sheriff of this court provides for his fees and compensation, although there is a general law on the subject of fees and salaries. The act organizing circuit courts contains subjects quite as incongruous as any in this, among which are the appointment and compensation of judges *pro tem.*, the appointment of elisors, their oath and bond, although we have a general law on the subject of official bonds.

"The following is the title of a very important act, to wit: 'An act to establish courts of common pleas, and defining the jurisdiction and duties of, and providing compensation for the judges thereof.' Why was not the provision for compensation placed in the act in relation to fees and salaries, if this be a valid objection? The bill which became that act was reported to the House of Representatives by the chairman of the committee on the organization of courts, who was also a member of the judiciary committee, and it was passed with great deliberation. This objection, if valid, applies to the act for selecting jurors and providing for their compensation, to numerous provisions of the practice act, to the common school law, to the justices' act, which, besides prescribing their duties generally, provides for their election, duties of the board of election, the filling of vacancies, the giving of bond, jurisdiction and practice, on most or all of which subjects there are other general statutes; and there are various other instances in which jurisdiction is given to them; such as, of tenants holding over, bastardy, etc. The act in relation to marriages (1 R. S. 362, secs. 9, 10, 11, and 12) contains the definition of and penalties for three distinct misdemeanors, besides providing an action in favor of the State to recover another penalty, and compensation for the attorney who prosecutes the suit. In short, it is difficult to say what of the entire revision would be left, if this objection prevails. The provision of the constitution referred to was never designed to have any such effect. Its object has been stated. To give it the effect claimed for it, would make the

instrument wholly impracticable, and the laws passed under it a tissue of absurdities."

We have made a careful examination of the cases cited and relied upon in the opinion of the majority, and have reached the conclusion, that while the most of such cases were correctly decided, they do not support the ruling in this case. A brief examination of such cases will show the questions involved, and the grounds upon which the rulings were based.

In *The State* v. *Wilson*, 7 Ind. 516, the question was, whether under an act entitled "an act supplemental to an act entitled 'an act to revise, simplify and abridge the rules of practice, pleadings and forms in civil cases in the courts of this State,'" the legislature possessed the power to prescribe forms in criminal cases. This court correctly held that the title of the act was, in express terms, restricted to civil cases, and that such title was not broad enough to embrace forms in criminal cases, there being an act relating to proceedings in such cases.

The question in *Foley* v. *The State*, 9 Ind. 363, was, whether the fourteenth section of "an act to limit the number of grand jurors, and to point out the mode of their selection, defining their jurisdiction, and repealing all laws inconsistent therewith," was legally connected with the subject expressed in the title. The fourteenth section was as follows: "The grand jury shall have cognizance of felonies only; but on an indictment for an assault, or an assault and battery with an intent to commit a felony, the defendant may be convicted of a lesser offence." The question was, whether so much of such section as provided for the punishment of the lesser offence was embraced by the title. Gookins, J., who wrote the opinion of the court, was of the opinion that the subject of the act was the jurisdiction of the grand jury, and that the said clause was constitutional; but a majority of the court held otherwise.

The same question again came before the court in *Gillespie* v. *The State*, 9 Ind. 380, and was decided the same way.

There was also involved the further question of whether the seventy-third section of the act relating to criminal cases was embraced in the title, and the court held that it was, and uses the following language : " We do not discover any constitutional objection to the title under which this provision is found, which does not equally pertain more or less to the whole body of the revision. In the very nature of things, no subdivision can be more than an approximation to the constitutional requirement. The whole body of the law, and the several parts, are, in some measure, related to, and run into, each other. Such are the relations of many subordinate provisions—for example, the one now before us—that they might, perhaps, appropriately appear under any one of several titles. Where it is thus doubtful whether the seventy-third section should not have more properly appeared under some other title, the doubt must fall in favor of the action of the assembly in placing it where it is. This seventy-third section is very clearly distinguished as to title from the similar provision found in the grand jury act. There, under a title relating solely to the grand jury, is found a provision belonging to the powers and duties of traverse juries. That provision had no necessary, or even obvious, connection with the duties of the grand jury. It might not be called into action for months after that body had been discharged. Hence, it was clear that it was neither embraced in the title, nor necessarily connected with the subject-matter."

We very fully approve the reasoning of the court in the above case. It lays down the rule, that when there is a necessary or obvious connection between a provision and the subject-matter expressed in the title, such provision will be sustained ; for where that is the case no member of the legislature could be deceived as to the character of the law. No one would expect to find in a grand jury act a provision regulating the duties of traverse juries, but one would reasonably look for such a provision in the criminal act.

In *The State* v. *Bowers*, 14 Ind. 195, an act came under

consideration, the title to which was "an act to amend the first section of an act entitled 'an act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope, and wire dancing, puppet show, and legerdemain,' approved June 15th, 1852, and for the encouragement of agriculture, and concerning the licensing of stock and exchange brokers." It was held, that the subject of the act was licenses, and that it was not unconstitutional, as containing more than one subject. But it was held, also, that as the licenses which it authorized and required were specified in the title, the act could embrace no others, and consequently a provision in the act requiring concerts to be licensed was void.

In *Mewherter* v. *Price*, 11 Ind. 199, the title of the act was "an act concerning promissory notes and bills of exchange." The body of the act provided "that all promissory notes, bills of exchange, or other instruments of writing," etc., shall be negotiable, etc. The question was, whether the provision in reference to "other instruments of writing" was embraced in the title, and it was held that it was not. The court say : "We have seen that the title to the act under consideration is limited to promissory notes and bills of exchange. Its language is very explicit, and we know of no rule of construction by which it can be extended so as to embrace instruments in writing other than those which it expressly names."

In *Igoe* v. *The State*, 14 Ind. 239, the title of the act was "an act for the incorporation of insurance companies, defining their powers and prescribing their duties." The fifty-sixth section of the act related to foreign insurance companies. The question was, whether such section was embraced by the title. The court held it was not, and gave as a reason for such ruling, that "the reading of this title at once induces the conclusion that the various provisions of the act relate alone to companies to be incorporated within this State—in other words, to the incorporation, the powers, and the duties of domestic insurance companies, and nothing else."

The same question was involved, and was decided the same way, in the case of *Grubbs* v. *The State*, 24 Ind. 295.

In *Spaugh* v. *Huffer*, 14 Ind. 305, the title of the act was "an act providing for the election and qualification of justices of the peace, and defining their jurisdiction, powers, and duties in civil cases."

Section 113 of that act provides, that no constable shall purchase a judgment on the docket of any justice in the township of the constable.

In the same volume of the code is an act entitled "an act prescribing the number, and defining the powers and duties of constables."

The point involved was, whether section 113 of such act was embraced by, or properly connected with, the subject of the justices' act, and it was held that it was not.

In the act under examination, there are five specifications of subjects of legislation, and they may be classified as follows :.

1. To regulate the sale of intoxicating liquors.

2. To provide against evils resulting from any sale of intoxicating liquors.

3. To furnish remedies for damages suffered by any person in consequence of the sale of such liquors.

4. Prescribing penalties for the violation of any of the provisions of such act.

5. To repeal all laws in conflict therewith, and declaring an emergency.

We do not mean that such specifications, or enumeration of objects, are to be regarded as so many different subjects within the meaning of the section of the constitution under examination ; for if such were the case, then the entire act would be void for embracing more than one subject. Conceding that the subject of the act is the sale of intoxicating liquors, we hold that it was competent for the legislature to provide against the evils resulting from such sale. Such legislation is not foreign, but is germane to the subject of the act. It is just where a person of ordinary intelligence would look for and expect to find such legislation. When such is the case, the requirement of the constitution has been fully complied with.

Thus far we have confined our examination of adjudged cases to the decisions of this court. Many of the other states have constitutional provisions similar to ours, upon which constructions have been placed by the courts of such states. We have made a careful examination of such decisions, and are satisfied that a more liberal and less technical construction has been placed upon such provisions in such states than in this State.

In the State of Illinois, it is provided by the constitution, that "no private or local law shall embrace more than one subject, and that shall be expressed in the title."

In *O'Leary* v. *County of Cook*, 28 Ill. 534, the Supreme Court held, that under an act entitled "an act to incorporate the North-Western University," a section which imposed a penalty for selling liquor within four miles of such University was embraced by the title. The court say: "It was designed for the benefit and well-being of the institution, and this is the touchstone of the constitutionality of the enactment. If its design was foreign from the subject of the law, which was the creation of, and to provide for the well-being of, an institution of learning; if the design was to protect the community generally, from the bad influences of a particular temptation, without a particular reference to the institution, then it might be said, with much propriety, that it was foreign and not germane to the subject of the law."

The following cases in that State are based upon almost as liberal a rule of construction: *The Belleville, etc., R. R. Co.* v. *Gregory*, 15 Ill. 20; *Firemen's, etc., Association* v. *Launsbury*, 21 Ill. 511; and *Supervisors, etc.,* v. *The People,* 25 Ill. 181.

In New York, the constitutional provision is the same as in Illinois. In *Conner* v. *The Mayor, etc.,* 1 Selden, 285, the court say: "The design of the constitutional provision was, to prevent the uniting of various objects having no necessary or natural connection with each other, in one bill, for the purpose of combining various pecuniary interests in support of the whole, which could not be combined in favor of either by

itself. It is plain to my mind that the statute in question is not within the mischiefs which this provision was intended to remedy, and that the objection is, therefore, not well founded."

In *The Sun Mutual Ins. Co.* v. *The Mayor, etc.*, 4 Selden, 241, the court say : " There must be but one subject, but the mode in which the subject is treated, or the reasons which influenced the legislature, could not, and need not be stated in the title, according to the letter and spirit of the constitution. I think this law is addressed to a single subject, and that is expressed in the title. Whether the description of the subject might not, with propriety, be more specific, it seems to me is a question for the legislature rather than for the courts. The purpose of the sixteenth section was, that neither the members of the legislature, nor the public, should be misled by the title ; not that the latter should embody all the distinct provisions of the bill in detail." See *Town of Fishkill* v. *Fishkill, etc., Co.*, 22 Barb. 634 ; *Brewster* v. *City of Syracuse*, 19 N. Y. 116 ; *The People* v. *McCann*, 16 N. Y. 58 ; *The People* v. *Lawrence*, 36 Barb. 177 ; *Sharp* v. *Mayor, etc.*, 31 Barb. 572 ; *Williams* v. *The People*, 24 N. Y. 405.

In Iowa the constitutional provision is, that " every law shall embrace but one subject, which shall be expressed in its title."

In *The State, ex rel. Weir*, v. *The County Judge, etc.*, 2 Iowa, 280, the court, in placing a construction on the above provision, say : " The intent of this provision of the constitution was, to prevent the union, in the same act, of incongruous matter, and of objects having no connection, no relation. And with this, it was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another. It is manifest, however, that there must be some limit to the division of matter into separate bills or acts. It cannot be held with reason, that each thought or step toward the accomplishment of an end or object, should be embodied in a separate act. When we find in the revenue law provisions concerning the county

treasurer's powers to levy upon and sell personal property as a constable, or concerning his fees, or relating to a pedler's license; and when we see in the school law, provisions about the superintendent of public instruction, and the school fund commissioner, and about school district officers, and their bonds, and about state, and county, and school district funds; we are not surprised, and no one suspects a breach upon the constitution.    These things are congruous with the end proposed.    But if we should find in one of these acts, a bank charter, or some provision establishing roads, or giving the right of way to railroads, or concerning the law of mechanics' liens, we might well be surprised, and say, this is not what it professes.    Many other instances of both these kinds might be named."

See, to the same effect, in that state, the following cases: *Santo* v. *The State*, 2 Iowa, 165 ; *Morford* v. *Unger*, 8 Iowa, 82 ; *McAunich* v. *The Mississippi, etc., R. R. Co.*, 20 Iowa, 338 ; *Whiting* v. *City of Mount Pleasant*, 11 Iowa, 482 ; *State* v. *Squires*, 26 Iowa, 340.

The constitutional provision in Kentucky is, that " no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

In *Phillips* v. *Covington, etc., Co.*, 2 Met. Ky. 219, the court of appeals in that state was called upon to state the purpose of such provision, and to place a construction thereon. The court say:    " A practice had become prevalent of uniting in the same act of the legislature subjects which had no relation to each other, and which were wholly dissimilar and unconnected.    Hence it not unfrequently happened that the title of an act gave no indication whatever of some of the subjects to which its provisions related.    And by permitting amendments to be made to the bill, by which distinct and unconnected matters might be introduced into and made a part of it, an improper influence was sometimes brought to aid in its final passage.    To remedy this evil the constitutional provision under consideration was adopted. Such a construction should therefore be given to it as is

necessary to render it effectual in accomplishing the object for which it was designed. But it should not be so con-strued as to restrict legislation to such an extent as to render different acts necessary where the whole subject-matter is connected, and may be properly embraced in the same act. It is not necessary for the accomplishment of the pur-pose contemplated to go from one extreme to the other, nor would such a course be consistent with the intention of the framers of the constitution. This prohibition should receive a reasonable and not a technical construction; and looking to the evil intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning. None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in its title."

To the same effect are the following cases in that State : *Chiles* v. *Drake*, 2 Met. Ky. 146; *Louisville, etc., Co.* v. *Ballard*, 2 Met. Ky. 165; *Johnson* v. *Higgins*, 3 Met. Ky. 566; *Chiles* v. *Monroe*, 4 Met. Ky. 72.

The constitutional inhibition in Minnesota is, "no law shall embrace more than one subject, which shall be expressed in the title."

In *The State, ex rel. Stuart*, v. *Kinsella*, 14 Minn. 524, the court say : "The exigencies of legislation require that this provision should not be so strictly construed as to cripple the legislature, by prohibiting the insertion into laws of those mat-ters which, though they may not be specifically expressed in the title, are proper to the full accomplishment of the object so expressed ; such is presumed to have been the inten-tion of its authors; courts, therefore, give it a liberal con-struction. The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it, or con-nected with, or proper to the more full accomplishment of the object so indicated, is held to be in accordance with its spirit; but a more liberal construction cannot be given, with-

out letting in the evils which the provision was intended to exclude."

To the same effect are *The Board of Supervisors* v. *Heenan,* 2 Minn. 330; *Tuttle* v. *Strout,* 7 Minn. 465.

Judge COOLEY, in *The People* v. *Mahaney,* 13 Mich. 481, says: "But it is insisted that the whole law is unconstitutional and void, because in violation of section 20 of article 4 of the constitution, which provides, 'no law shall embrace more than one object, which shall be expressed in its title.' The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dexterous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. There was no design by this clause to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number; but the framers of the constitution meant to put an end to legislation of the vicious character referred to, which was little less than a fraud upon the public, and to require that in every case the proposed measure should stand upon its own merits, and that the legislature should be fairly satisfied of its design when required to pass upon it."

The ruling in the above case was fully approved in the subsequent case of *Ryerson* v. *Utley,* 16 Mich. 269, and the same learned judge, in delivering the opinion of the court, refers to and fully approves the language quoted from the Kentucky case, *supra.*

In *Fletcher* v. *Oliver*, 25 Ark. 289, the Supreme Court say: "The first constitutional objection is, that the act embraces more than one subject in the same title. The title of the act is 'for opening and regulating roads and highways.' Under this title may be included every act necessary to carry into effect or accomplish the design. The object of this clause was to prevent combinations, by which various and distinct subjects of legislation should gain support, which they could not if presented separately."

The constitution of Western Virginia provides, that "no law shall embrace more than one subject, which shall be expressed in its title."

The Supreme Court of that State, in *Cutlip* v. *Sheriff, etc.*, 3 West Va. 588, say: "The object of this provision was to guard against the enactment of laws by a sort of fraud upon the legislature by including in an act for one purpose, which was stated in its title, other and different objects, not so stated, and of which nothing was often known save by a few interested in the bill. * * * Another important object was to secure a fair and impartial consideration of each subject by making it stand or fall on its merits, instead of having it carried against the wishes of the majority, often by having it tacked to some important measure it might be difficult or disastrous to defeat."

The Supreme Court of Kansas, in *Bowman* v. *Cockrill*, 7 Kansas, 311, say: "Section 16, article 2 of the constitution should be liberally construed, otherwise the legislature would be confined within such narrow rules that they would be greatly embarrassed in the proper and legitimate exercise of their legislative functions. 'No bill shall contain more than one subject, which shall be clearly expressed in its title;' but this subject may be broad and comprehensive, or it may be narrow and limited."

In *Robinson* v. *The State*, 15 Texas, 311, the Supreme Court, in speaking of the constitutional inhibition, that no law should embrace more than one subject, which should be expressed in its title, said, that such provision should not receive a far-

fetched and strained construction, but should be liberally construed.

The question came before the Court of Appeals in the State of Maryland, in *Davis* v. *The State*, 7 Md. 151. The provision of the constitution of that state is, " Every law enacted by the legislature shall embrace but one subject, and that shall be described by the title." Judge Mason, delivering the opinion of the court, says : " The object of this constitutional provision is obvious and highly commendable. A practice had crept into our system of legislation, of engrafting, upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters, and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction and actually vote for such provisions, which if they were offered as independent subjects, would never have received their support. In this way the people of our state have been frequently inflicted with evil and injurious legislation. Besides, foreign matter has often been stealthily incorporated into a law, during the haste and confusion always incident upon the close of the sessions of legislative bodies, and it has not unfrequently happened, that in this way the statute books have shown the existence of enactments, that few of the members of the legislature knew anything of before. To remedy such and similar evils, was this provision inserted into the constitution, and we think wisely inserted. We are not prepared to say, that a whole law, otherwise constitutional, would be rendered void by the introduction of a single foreign or irrelevant subject into it, and where such subject was not indicated in the title. In such a case the irrelevant matter would be rejected as void, while the principal subject of the law would be supported, if properly described in the title. But if an act of assembly be composed of a number of discordant and dissimilar subjects, so that no one could be clearly recognized as the controlling or principal one, the whole law would be void."

To the same effect is the case of *Keller* v. *The State,* 11 Md. 525.

The remarkable unanimity as to the object and true rule of construction of the several constitutional provisions, in the several states named, will strike the most casual observer. It is held in all such cases that such provisions should receive a liberal construction, and that no law should be held void unless it comes clearly within the mischief intended to be remedied. Nor should it be overlooked or forgotten that our constitutional provision is broader and more comprehensive than that in any other state, and should, therefore, receive a more liberal and beneficial construction. In all the quotations which we have made from the constitutions of other states, the language has been, with slight verbal changes, that "every law shall embrace but one subject, which shall be expressed in the title;" while the provision in our constitution is, "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title." Why did the framers of our constitution add the words "and matters properly connected therewith?" The plain and obvious purpose was to enlarge the section and make it more comprehensive. In the other states, the constitutional inhibition is, that every act shall embrace but one subject, while here every act shall embrace but one subject, but it may contain provisions on all matters properly connected with the subject indicated in the title.

But we call especial attention to the last clause of the sentence, and that is, "which subject shall be expressed in the title." There need be nothing expressed in the title but the one subject. The matters properly connected therewith need not be expressed in the title. What was meant by the framers of the constitution by the words "and matters properly connected therewith?" It was intended that the "matters" should be congruous with, and not dissimilar from, the subject of the act; that they should be germane, and not foreign to the principal purpose of the law.

The Supreme Court of Minnesota say: "The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it, or connected with, or proper to the more full accomplishment of the object so indicated, is held to be in accordance with its spirit." Is not the consumption of liquor properly connected with its sale? For what other purpose is it sold? Is not intoxication the natural, legitimate, and almost invariable result of the sale and consumption of intoxicating liquor? Is not the punishment of intoxication necessary to the full accomplishment of the main purpose designed by the legislature? What was that purpose? Was it not to diminish, instead of to increase, the evils resulting from the sale of intoxicating liquors?

This court, in *Grubbs* v. *The State, supra,* in plain and undoubted language, declared the purpose for which this provision was inserted in the organic law, and that was to prevent the union in one act of incongruous, dissimilar, and unconnected subjects.

The Court of Appeals of Kentucky say that the inhibition of the constitution should receive a "reasonable and not a technical construction; and looking to the evil intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning."

Does the ninth section obviously come within the spirit and meaning of our constitution? We think it does not. No member of the legislature could have been deceived or misled into the support of the bill. The provision is just where any person seeking for such a law would expect to find it, in an act regulating the sale of intoxicating liquors and providing against the evils resulting therefrom. Then what breach has been made in our organic law? What infraction of the constitution can there be when the section is within neither the spirit or obvious meaning of the constitution, nor the evils intended to be remedied?

The late judges of this court, in *Bright* v. *McCullough, supra,* laid down a reasonable, liberal, and remedial rule of construction of the section in question, which would not

embarrass legislation, but would effectually remedy the evils intended by the framers of the constitution. This court, as at present constituted, in the subsequent case of *Shoemaker* v. *Smith, supra,* fully and in express terms approved and followed such ruling. The ruling in these cases is in entire accord with the decisions in all the other states that have similar constitutional provisions. Believing that the rule laid down in the opinion of the majority of the court is not in harmony with the current and weight of authority, and spirit and meaning of the constitution, we have felt constrained to express our dissent from such ruling.

Opinion filed November term, 1873; petition for a rehearing overruled May term, 1874.