HOOKER *v.* PARKIN.

5-2726                                                357 S. W. 2d 534

Opinion delivered May 28, 1962.

220

*D. D. Panich,* for appellant.

*J. Frank Holt,* Atty. General, by *Jack Holt, Jr.,* Chief Asst. Atty. General, and *Russell Morton,* Asst. Atty. General; *Dan Stephens,* General Counsel, Ark. Hwy. Dept., by *Don Gillaspie; Mehaffy, Smith & Williams,* by *W. J. Smith* and *James E. Westbrook,* for appellee.

JIM JOHNSON, Associate Justice. The appellant, J. J. Hooker, a citizen, resident and taxpayer of Little Rock, Pulaski County, Arkansas, filed a class action in the Chancery Court of Pulaski County, challenging the constitutionality under our State Constitution of five acts: Act 200 of 1961; Act 465 of 1961; Act 395 of 1961; Act 118 of 1953, as amended, which is the Revenue Stabilization Law; and, Act 412 of 1955, as amended, which is the General Accounting Procedures Law. The appellees are Governor Orval E. Faubus and other state officials charged with the execution and administration of the questioned acts. The learned Chancellor found the challenged acts to be constitutional in all respects and the appellant has brought the case to this Court by appeal.

The three appropriation acts involved (200, 465 and 395 of 1961) provide for the expenditure of more than 250 million dollars during the two fiscal years, begin-

ning on July 1, 1961, for the expenses of meeting the State's emergencies and carrying out the State's good roads and educational programs. The other two acts involved have been in effect for a number of years and in practical application constitute instrumentalities by which the Legislature controls the allocation of state funds and the accounting by the state officials and employees for such funds. The magnitude of this action and its impact on the welfare of the people of Arkansas cannot be put into words.

In his Memorandum Opinion the learned Chancellor stated that our State Constitution of 1874 is a document we should revere and we agree with him. While we consider the grave issues raised in this appeal, we must be mindful of the fact that our state Constitution is a restrictive document; whereas our Federal Constitution is a document of delegated powers. The Federal Government has no right to act in a given field unless authority to do so has been delegated to it by the States. To the contrary, the Legislature (which is made up of the people's elected representatives and spokesmen) has absolute power and authority to legislate in all fields unless prohibited or restricted from doing so by the State Constitutution or unless authority to so act has been delegated to the Federal Government and such authority has been exercised by the Federal Government.

Also, we are mindful of the rules urged by appellees to the effect that any doubt as to the constitutionality of an act must be resolved in favor of the validity of the act, *State* v. *Sloan,* 66 Ark. 575, 53 S. W. 47; *State* v. *Moore,* 76 Ark. 197, 88 S. W. 881; and, that contemporaneous construction given by the Legislature to the constitutional provisions involved are to be given great weight (though not conclusive), 6 R. C. L. 63 and *Pressman* v. *D'Alesandro,* 211 Md. 50, 125 A. 2d 35. However, we find no occasion for the applicability of these urged rules in the case at bar, since the constitutionality of the acts in question seems to be too clear to admit of any doubt.

The appellant contends that: "Act 200 of 1961 is unconstitutional in that (1) it directs unlawful delegations of power in violation of Article 4 of the Arkansas Constitution, and (2) the appropriation set out in Section 2 of said act is in violation of Sections 29 and 30 of Article 5 of the Arkansas Constitution in that said appropriation fails to itemize the amounts to be spent and appropriates funds for more than one subject."

One must concede that this act delegates broad powers to the Highway Commission, but we find nothing in these powers that contravenes Article 4 of the State Constitution, which reads as follows:

"Section 1. DEPARTMENT OF GOVERNMENT. The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.

"Section 2. SEPARATION OF DEPARTMENTS. No person or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

Act 200 appropriates funds for the operation of the Highway Department from July 1, 1961, to July 1, 1963. The act establishes the maximum salaries and wages for a maximum number of employees by grades and classes. The act does permit the Highway Commission to employ a lesser number of employees and to pay less than the maximum salaries and wages to employees in the various grades and classes. The need for employees and the salary or wage deserved by the individual employee are left for the Highway Commission's determination. The delegation of this power is necessary for the orderly and efficient operation of the Highway Department and is not repugnant to Article 4 of the State Constitution. The Legislature has the right to delegate the power to determine facts upon which the law makes

or intends to make its action depend. *McArthur* v. *Smallwood,* 225 Ark. 328, 281 S. W. 2d 428. In this case the facts we repeat are: first, the need for the employee, and second, the ability and efficiency of the employee.

Act 200 also appropriates a lump sum of $83,100,000 for each fiscal year of the biennium for the following:

"Maintenance, Construction, Reconstruction, Repair, Replacement, Relocation, Betterment, and Operation of roads, bridges, ferries, and toll facilities in the State Highway System; including the acquisition of necessary rights of way; the purchase, repair, and operation of equipment; the purchase of land and construction of buildings and facilities required for the operation of the highway department, including facilities necessary for truck-weighing operations; the purchase of materials and supplies, the payment of departmental current expense, and the payment of travel expenses."

How much money is to be expended for each of these items is left for determination by the Highway Commission. As we view the matter, the only alternative would be for the Legislature to decide and fix by law each road and bridge to be repaired or built, the kinds of equipment and materials to be used, et cetera. We cannot find any intention for such a restriction in Article 4 of the State Constitution. Neither do we find any intention that the Highway Department or any other Department or agency of the State should be required to employ a person not needed simply because such employment is authorized by an act.

Another provision of Act 200 authorizes the Highway Commission to carry forward from the first fiscal year of the biennium to the second fiscal year appropriation authorizations not used in the first year. However, the carry over is limited in purpose. An appropriation may be made for two years, and this is authorized by Article 5, Section 29 of the State Constitution which is the very provision the appellant contends this act violates. This provision is as follows:

"Section 29. APPROPRIATIONS. No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years."

Act 200 does not authorize the withdrawal of money from the treasury without an appropriation. To the contrary, it requires an appropriation and clearly states the purpose for the appropriation. The act specifies in dollars and cents the maximum amount which may be drawn from the treasury. The act makes no appropriation for a period longer than two years. Clearly the act meets each requirement of Article 5, Section 29, supra.

The appellant's last objection to Act 200 is that it contains more than one subject contrary to Article 5, Section 30 of the State Constitution. We find that this issue was settled in one of our earliest cases, *Fletcher v. Oliver, Sheriff,* 25 Ark. 289 (1868) in which the Court said:

"The title of the Act is for 'opening and regulating roads and highways.' Under this title may be included every act necessary to carry into effect or accomplish the design."

Then the Court posed this question:

"Is there a power conferred, or a duty enjoined, by any of the sections of the law of 1868 which, if left out, would not have retarded and delayed the construction of roads and highways?"

In our opinion, if any power conferred or duty enjoined upon the Highway Commission had been left out of Act 200, the construction of roads and highways in our State would have been retarded and delayed. We find Act 200 valid in every respect.

The appellant raises exactly the same objections to Act 465 of 1961 (appropriation act for the Department of Education for period from July 1, 1961 to July 1, 1963)

as he raises to Act 200, i.e. that the act offends Article 4 and Article 5, Sections 29 and 30 of the State Constitution.

Act 465 contains twenty sections and covers eleven pages in Volume 2 of the Acts of Arkansas for 1961. A detailed discussion of each clause or sentence or item would serve no useful purpose. We have carefully examined the act and find no delegation of unlawful powers.

The State Board of Education is empowered to determine the need for employees and to fix the number of employees and salaries, within maximum authorizations. In this connection what we have said about Act 200 suffices here. The Governor is authorized to reduce the amount to be expended for Transportation Aid in each fiscal year. We find that his action must depend upon facts to be determined and that this requirement meets the test set forth in *McArthur* v. *Smallwood, supra,* and as further set forth in *State* v. *Davis,* 178 Ark. 153, 10 S. W. 2d 513, as follows:

"The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

It would be poor policy, to say the least, for the Legislature to fix the number of employees for this or any other department and to require the employment and payment of such employees when not needed. The appellant has read such an intention into *Nixon* v. *Allen,* 150 Ark. 244, 234 S. W. 45, but we do not agree with his interpretation of that decision where we quoted Article 16, Section 4 of the state Constitution which reads as follows:

"The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law."

Act 465 does not authorize the payment of a greater salary or fee to any employee than the amount fixed by law. We construe this provision to mean that the Legislature has the sole authority to establish the maximum remuneration to be received by any State employee and to establish the maximum number of such employees. We can find no requirement to the contrary.

Likewise we find it is within the power of the Legislature to fix a maximum amount to be used for any given purpose, with a proviso that the money will not be so used unless needed, such as was done in connection with the appropriation for Transportation Aid.

Act 465 specifies appropriations in dollars and cents, contains no appropriation that is not for a specific purpose, does not authorize the drawing of money from the treasury without an appropriation, and contains no appropriation for more than two years. This act meets every requirement of Article 5, Section 29, of the State Constitution.

The appellant's contention that Act 465 covers more than one subject has given us some concern, because of Article 14 of the State Constitution which pertains to education in the public schools. However, we can find no limitation in the State Constitution that would prohibit the Legislature from treating all educational functions as one subject. The legislature has the right, if it so desires, to provide for education of our citizens from the cradle to the grave. The State Constitution requires a free public education for our boys and girls between the ages of six and twenty-one years, Article 14, Section 1; but we reiterate, there is nothing in the State Constitution to prohibit the Legislature from ex-

tending aid to higher education nor from developing educational opportunities for our people in the fields of vocational and technical training. The scope of activities which may be assigned to the State Board of Education and its various divisions by the Legislature has no bounds so long as those activities pertain to education (except as limited by Amendment 33). Black's Law Dictionary defines "education" as follows:

"EDUCATION. Comprehends not merely the instruction received at school or college, but the whole course of training, moral, intellectual, and physical. Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all. *Barbers' Commission of Mobile County* v. *Hardeman,* 21 So. 2d 118, 120, 31 Ala. App. 626. Acquisition of all knowledge tending to train and develop the individual. *Mitchell* v. *Reeves,* 123 Conn. 549, 196 A. 785, 788, 15 A. L. R. 1114."

Act 465 is limited to the subject of education and does not violate Article 5, Section 30, of the State Constitution.

The appellant contends that Act 395 of 1961, violates Article 4 and Article 5, Sections 29 and 30, of the State Constitution, supra.

The title and Section 1 of this Act are as follows:

"AN ACT to Appropriate Funds to Alleviate Conditions Arising in Public Emergencies, and for other Purposes."

"SECTION 1. In the event of riot or threatened riot, sabotage, public insurrection or threatened insurrection, storm, flood, famine, or other public calamity, or other unforeseen situations which upon determination of necessity by the Governor calls for immediate action, the Governor is hereby authorized to issue a proclamation declaring an emergency to exist, which said proclamation shall include: (a) The nature and location of the emergency; (b) the name of the department or agency of State which, in the Governor's opinion, is best

able to alleviate or obviate the conditions which have arisen or are about to arise because of such emergency; and (c) the amount of funds required therefor; such amount or so much thereof as shall have been set forth in each such proclamation, to be expended upon vouchers drawn by the disbursing agent of the department or agency of State named in the proclamation. The original of each such proclamation shall be filed with the Secretary of State and executed counterparts thereof shall be filed with the State Auditor, State Treasurer, and State Comptroller."

Section 2 appropriates $100,000 each year for the two-year period beginning July 1, 1961.

Section 3 is a repealing clause.

The reason we have quoted in toto the title and Section 1 of this act is to show clearly that the act treats with one subject, i.e. "Public Emergencies." What constitutes a public emergency is to be determined by the Governor within the requirements of Section 1. It is to be noted that these requirements are specific and strict. Of course, any emergency proclamation is subject to attack under the position that no emergency exists.

This act does not authorize the withdrawal of money from the treasury without an appropriation, the purpose is distinctly stated, the maximum amount to be drawn from the treasury is specified in dollars and cents, and no appropriation is made for more than two years.

The same authorities cited in connection with our discussion of Acts 200 and 465 are applicable here, and reference to the many additional cases which could be cited to support our views on these three appropriation acts would only serve to unduly lengthen this opinion.

The appellant contends that Act 118 of 1953, as amended, the Revenue Stabilization Law, violates Article 4, Article 5, Sections 29 and 30, and Article 16, Sections 11 and 12 of the State Constitution.

This act came in to being as Act 311 of 1945. It was amended by each subsequent session of the Legislature and was completely redrafted as Act 118 of 1953. Each regular session of the Legislature since then has resulted in amendments to the act.

It would literally require volumes to discuss every facet of this important and vital act; but regardless of the length of this opinion, we are compelled to consider and, in the case at bar, feel impelled to state our views on each objection raised by the appellant. However, first we think that any discussion of the act should be prefaced with a brief review of the conditions that apparently brought about its enactment.

Upon the adoption of the Constitution of 1874, the Legislature launched a program based on deficit financing which eventually brought the State to the brink of bankruptcy. As early as 1875 the Legislature passed an act making appropriations for the expense of the executive, legislative and judicial branches of the State government, which included numerous items to supply deficiencies in appropriations theretofore made for various expenses of government. Act March 6, 1875, Section 3. A few other examples are: Act 123, Ark. Acts of 1887; Act 81, Ark. Acts of 1889, and Act 135, Ark. Acts of 1899.

This record of deficit financing continued in varying degrees until 1933 when Governor Futrell's legislative program to save the financial integrity of the State became law. In that year the Legislature proposed Amendment No. 20 to the State Constitution which was adopted in the general election of 1934 by a majority of almost 4 to 1. This amendment is as follows:

"BONDS PROHIBITED EXCEPT WHEN APPROVED BY MAJORITY VOTE OF ELECTORS. Except for the purpose of refunding the existing outstanding indebtedness of the State and for assuming and refunding valid outstanding road improvement district bonds, the State of Arkansas shall issue no bonds or other evidence of indebtedness pledging the faith and credit of the State or any of its revenues for any pur-

pose whatsoever, except by and with the consent of the majority of the qualified electors of the State voting on the question at a general election or at a special election called for that purpose.

"This Amendment to the Constitution of Arkansas shall be self-executing and require no enabling act, but shall take and have full force and effect immediately upon its adoption by the electors of the State."

Clearly, the people of Arkansas spoke out through this amendment against deficit financing in State affairs, and in effect established public policy of the State Government, against such spending. In our opinion, this amendment was a mandate to the Legislature to prohibit issuance of state warrants unless money was on hand (from whatever source derived) to cover such warrants. Herein lies the financial stability of the State Government.

The ground work done during Governor Futrell's tenure in office was the base upon which the Revenue Stabilization Law was established in 1945 as a part of Governor Laney's fiscal program. Although many amendments and a redraft of this act subsequently followed, the basic concepts of the 1945 act remain to this day.

The Revenue Stabilization Law is a complex accounting tool designed to insure that the recipients of State funds receive monies only so long as cash is on hand. The appropriation for each agency sets a top limit on the amount that may be paid to that agency, and the Revenue Stabilization Law insures that no more is spent than is taken in and is allocated by the Legislature.

Does this act delegate powers contrary to Article 4 of the State Constitution, supra? We think that it does not. Duties to be performed by the administrative department of the State are spelled out in detail and depend upon facts over which no one has control, such as the amount of taxes collected which depends upon economic conditions. Duties delegated are purely minis-

terial since the Legislature has established specific procedures to be followed.

Turning now to the appellant's contention that this act violates Article 5, Sections 29 and 30, of the State Constitution, supra, we need only to say that the act provides for the allocation of funds within the State Treasury and it does not provide for the withdrawal of any funds from the Treasury. The act is not an appropriation act within the meaning of these two provisions of the State Constitution. *Dickinson* v. *Johnson*, 117 Ark. 582, 176 S. W. 116; *Dickinson* v. *Clibourn*, 125 Ark. 101, 187 S. W. 909.

The appellant next contends that this act violates Article 16, Section 11, of the State Constitution. This provision is brief and reads as follows:

LEVY AND APPROPRIATION OF TAXES. No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.''

The appellant is substantially correct in his contention that a tax levied for one purpose cannot be used for another. *Page* v. *Alexander*, 206 Ark. 479, 177 S. W. 2d 415. However, the appellant is in error in reasoning that a tax once levied for one purpose cannot thereafter be levied for a different purpose. In *Page* v. *Alexander*, *supra*, this Court held that when a tax is collected pursuant to being levied for a specific purpose, the money so collected cannot be diverted for a different purpose. At no time has this Court held that a tax act cannot be repealed or amended. Apparently this is what the appellant seeks. Such a meaning cannot be read into the above-quoted section of the State Constitution. We point to the wording of this provision and note that money does not arise from a tax until the tax has been collected.

In considering this point raised by the appellant, we have studied each provision of the Revenue Stabili-

zation Law which levies a tax and have found in each instance that no tax money collected has been diverted to a different purpose than that for which it was levied. True, we have found amendment after amendment to the basic act levying a tax for a different purpose after a given date in the future and we hold that such a procedure is not prohibited by the State Constitution. This procedure is well demonstrated in the Legislature's handling of the sales tax (Act 233 of 1935 as amended) prior to the enactment of the Revenue Stabilization Law.

Since this act is not an appropriation act as stated above, it follows, therefore, that the appellant is in error in his contention that the act violates Article 16, Section 12 of the State Constitution which reads as follows:

"DISBURSEMENT OF FUNDS-APPROPRIATION REQUIRED. No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation."

Although the appellant objects to the allocation of a percentage of taxes collected to the Constitutional and Fiscal Agencies Fund, he fails to state the provision of the State Constitution upon which he relies for his position. This Court dealt with this subject in *Young* v. *Clayton*, 223 Ark. 1, 264 S. W. 2d 41, and we find nothing in the case at bar to require a contrary holding here.

Act 412 of 1955, as amended, the General Accounting Procedures Law, is the last act to come under attack by the appellant. He alleges that this act violates Article 4 and Article 5, Sections 29 and 30 of the State Constitution, supra.

This act does not authorize the withdrawal of any money from the State Treasury and it is not an appropriation act. Therefore, there is nothing in Article 5, Sections 29 and 30, which pertains in any manner to the General Accounting Procedures Law.

Now let us consider whether this act violates Article 4 of the State Constitution, *supra*.

The General Accounting Procedures Law may be summarized as conferring: powers upon certain State Constitutional officers and employees and upon the Legislative Council to prepare a budget for the Legislature's consideration when enacting specific appropriation acts; powers upon the administrative department of the State Government to require that certain records be kept and that state funds be accounted for according to an established accounting system; and powers upon the administrative department of the State Government to execute budget controls found necessary by the Legislature. These are in essence the powers which the appellant contends have been delegated in violation of Article 4, supra.

As we have stated, the Revenue Stabilization Law was first enacted in 1945. At that time certain accounting laws had been in existence for many years. These laws were amended from time to time and when appellee Faubus came into office in 1955, he proposed and the Legislature adopted the General Accounting Procedures Law which is comprehensive in detail. Through this act the Legislature has supplied the controls so necessary for the proper functioning of the Revenue Stabilization Law. These two acts go hand in hand and constitute as near as possible a guarantee against deficit spending by the State Government.

The Legislature has retained in this Law the right to enact the acts under which money can be withdrawn from the State Treasury. Since the Legislature is the department of the State Government that has this right and duty, it stands to reason that the Legislature also has the right to cloak such appropriations with such safeguards and restrictions as it may determine to be necessary for the preservation of the welfare of the people of this State.

In our opinion, the authorities cited above in this opinion relative to Article 4 of the State Constitution suffice and need not be repeated.

In reaching our conclusion on the whole case before us, we have borne in mind the following from *Fletcher* v. *Oliver, supra*:

"It is the bounden duty of courts not to defeat the will of the people, expressed through their representatives in the legislative halls, unless it is clearly manifest that some vested right or provision of the Constitution has been invaded. If the validity of every law is to depend upon the mere fact that the judiciary, if they had been legislating, would not have so arranged the law, we think that the Constitutional Convention reposed more confidence in the judicial department than sound discretion would warrant."

It follows, therefore, that the decree in all respects is affirmed.

McFADDIN, J., concurs.