The Honorable Charles L. Robinson, CPA, CFE Legislative Auditor 172 State Capitol Little Rock, AR 72201
Dear Mr. Robinson:
I am writing in response to your request for my expedited opinion on two questions regarding the funding of athletic programs at Arkansas State University at Jonesboro. You have summarized the background as follows:
 On April 12, 2002, representatives from Arkansas State University at Jonesboro appeared before the Legislative Joint Auditing Committee to discuss apparent deficits in their athletic fund. At issue were methods to remedy the athletic deficit in light of the limitations placed on the use of unrestricted educational and general funds by Arkansas Code Annotated § 6-62-803.
 In addition to the transfer of $750,000 as allowed by A.C.A. § 6-62-803, it is our understanding that Arkansas State University plans to remedy the estimated athletic deficit of $1.8 million by transferring funds from educational and general reserve funds. The University plans to reclassify up to $7.48 of hourly tuition previously paid for the 2001-2002 fiscal year to an "athletic fee."
 Arkansas State University plans to notify current students in writing with the following language:
 Arkansas State University requires additional resources from tuition and fees already assessed to provide for athletic operations this fiscal year. Up to $7.48 per student semester credit hour of the per hour tuition for 2001-02 (amount to cover an estimated $1.8 million deficit) may be used as an athletic fee to cover an intercollegiate athletic deficit. This is in addition to the current athletic fee of $10 per credit hour.
 The Board of Trustees approved this expenditure at its (date) meeting. We wish to emphasize that no new fee will be assessed to you directly as a result of this effort. This letter is being sent to keep you informed of the university's decision in this regard.
You indicate that Arkansas State University plans to issue this notice with the approval of Arkansas Department of Higher Education "(ADHE") Director Lu Hardin. Given that I discuss its substance at some length below, I will reproduce in full Mr. Hardin's opinion, which he rendered in correspondence dated April 11, 2002 to ASU President Leslie Wyatt:
 I am in receipt of your letter asking my opinion on the legality of raising the athletic fee by your Board in a specially called meeting. A.C.A. 6-62-801 states: The State Board of Higher Education is authorized and directed to limit unrestricted educational and general funds used to support intercollegiate athletic programs and to provide fair and equitable treatment in the amount of state subsidy of athletic program expenditures at state-supported institutions of higher education.
 A.C.A. 6-62-804 states: (a) Any athletic deficit of an institution shall be funded by a student athletic fee authorized by the board of trustees of each institution. (b) The student athletic fee shall be assessed on the basis of student semester credit hour and shall be clearly defined in all publications and institutional board minutes as being for the support of intercollegiate athletics, separate and distinct from other tuition or student activity fees.
 It is my opinion that the Arkansas State University Board could meet and designate an additional $7.48 per credit hour from tuition to athletic fees for a total of $17.48. There are two keys to the law in this area. First, the athletic fee must be specifically set aside and designated from tuition and other fees, and secondly, students must be clearly advised of the amount of athletic fees they are paying.
Therefore, if the Arkansas State University Board meets and raises the athletic fee as set forth above, and each student paying the fee is advised of this action by regular mail, the above statutory law will technically have been met. As you know, all of these actions must be reported to the Department of Higher Education for our annual reporting in July.
 The law also requires these fees to be included in future institutional publications. Also the fee will remain in effect until the Board takes action to change or lower the fee.
 This action, if taken, would eliminate the previous concept of a loan and would be a change of athletic fees.
(Emphasis in original.)
Against this backdrop, you have posed the following questions:
 1. May the board of a state-supported institution of higher education retroactively reclassify part or all of tuition as an "athletic fee" and subsequently transfer the increased "athletic fee" to the athletic fund in order to remedy a deficit in the athletic fund?
 2. If the answer to question #1 is "yes," does the reclassification and transfer to the athletic fund violate A.C.A. § 6-62-803 or any other statutory or legal restrictions?
RESPONSE
In my opinion, if one looks exclusively to the provisions of the Arkansas Code, in particular A.C.A. §§ 6-62-803 and -804, the answer to your first question is "no." Moreover, although your question invites analysis in terms of Ark. Const. amend. 33, I do not believe this constitutional provision would preclude the legislature from placing restrictions on the disposition of tuition contained within the unrestricted educational and general fund, which is what the legislature did in enacting A.C.A. §6-62-803. Given my response to your first question, your second question is moot.
Question 1: May the board of a state-supported institution of highereducation retroactively reclassify part or all of tuition as an "athleticfee" and subsequently transfer the increased "athletic fee" to theathletic fund in order to remedy a deficit in the athletic fund?
As noted above, if one looks exclusively to the provisions of the Code, notwithstanding Director Hardin's opinion to the contrary, I believe the answer to this question is "no."
Subsection 6-62-802(3) of the Code (Supp. 2001) defines the term "athletic deficit" as follows:
 "Athletic deficit" means athletic expenditures offset by athletic revenues, including:
(A) Athletic-generated income;
(B) Profits from other auxiliary enterprises;
 (C) The federally funded portion of college work-study students in the intercollegiate athletic program;
 (D) Transfers from funds other than the unrestricted educational and general fund; and
 (E) The allowable unrestricted educational and general transfer for four-year institutions, for two-year branches of four-year institutions, and at other two-year institutions of higher education.
As subsection 3(E) of this statute recognizes, only an "allowable" amount from the "unrestricted educational and general fund" is available for transfer as "athletic revenues" to offset any "athletic deficit."[1]
Several statutes bear on the question of what amount of unrestricted educational and general revenue might be "allowable" for designation as athletic revenues. As Director Hardin noted in his opinion, A.C.A. §6-62-801 (Repl. 1996) provides:
 The State Board of Higher Education is authorized and directed to limit unrestricted educational and general funds used to support intercollegiate athletic programs and to provide fair and equitable treatment in the amount of state subsidy of athletic program expenditures at state-supported institutions of higher education.
However, the State Board of Higher Education is limited in that discretion by A.C.A. § 6-62-803 (Supp. 2001), which provides in pertinent part:
 (a) Beginning in fiscal year 1991-1992, the amount of unrestricted educational and general funds for intercollegiate athletic programs at state-supported institutions of higher education shall be limited to four hundred fifty thousand dollars ($450,000) at four-year institutions and to fifty-one dollars ($51.00) per full-time-equivalent student per year at two-year branches of four-year institutions and at other two-year institutions of higher education.
 (b)(1) Beginning in fiscal year 1997-1998, state-supported four-year institutions of higher education may use an additional three hundred thousand dollars ($300,000) per fiscal year of unrestricted educational and general funds to provide gender equity in intercollegiate athletic programs.
In my opinion, the effect of this statute is to preclude the State Board of Higher Education in any fiscal year from approving for intercollegiate athletic programs at any four-year institution expenditures from unrestricted educational and general funds in excess of $750,000, subject to the further condition that $300,000 of this maximum amount must be devoted to providing gender equity in the athletic programs.
At issue in your request is whether the ASU board can in effect avoid this restriction by simply redesignating as an "athletic fee" funds already collected and currently designated as unrestricted educational and general funds. As noted above, ADHE Director Hardin apparently believes the ASU board can realize this goal pursuant to A.C.A. §6-62-804, which provides:
 (a) Any athletic deficit of an institution shall be funded by a student athletic fee authorized by the board of trustees of each institution.
 (b) The student athletic fee shall be assessed on the basis of student semester credit hour and shall be clearly defined in all publications and institutional board minutes as being for the support of intercollegiate athletics, separate and distinct from other tuition or student activity fees.
As I interpret Director Hardin's opinion, he believes the ASU board is empowered under the Code to recharacterize as an "athletic fee" any or all of that portion of unrestricted educational and general funds that comprises tuition, as opposed to state subsidies, regardless of whether in doing so the board exceeds the $750,000 limit established in A.C.A. §6-62-803. Characterizing any such action as merely a "change of fees," Director Hardin in effect concludes that A.C.A. § 6-62-803 applies only to that portion of unrestricted educational and general funds directly appropriated by the legislature.
With all respect, I must disagree with Director Hardin on this issue. In my opinion, A.C.A. § 6-62-803 reflects a clear legislative policy decision to limit to $750,000 annually the use of all unrestricted educational and general funds to finance athletic programs. I do not believe A.C.A. § 6-62-804 was intended, and I do not believe it can be read, to mean that a university board of trustees can by fiat evade this restriction simply by redesignating already collected unrestricted educational and general funds as an "athletic fee" and announcing as much to the university's students. To read A.C.A. § 6-62-804 as Director Hardin proposes would in effect be to render meaningless the restriction set forth at A.C.A. § 6-62-803. The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v.Witty, 336 Ark. 479, 484, 987 S.W.2d 257(1999); Lawhon Farm Services v.Brown, 335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A ReformParty v. Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. FleetMortgage Co., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State,317 Ark. 312, 877 S.W.2d 589 (1994); Death and Total Permanent DisabilityTrust Fund v. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992).
I do not mean the foregoing to suggest that the ASU Board cannot announce and impose an athletic fee to defray ASU's athletic deficit; in my opinion, A.C.A. § 6-62-804 clearly authorizes the Board to do so. However, I believe the Board is empowered to do so only with respect to fees to be imposed in the future. Significantly, Act 366 of 1991, which is codified in part as A.C.A. § 6-62-804, contains within its title the following: "An Act to Limit Unrestricted Educational and General Funds Used to Support Intercollegiate Athletic Programs at State Supported Institutions of Higher Education." This title, which in all respects accords with the statutes discussed above, strongly suggests that the legislature was intent on ensuring that funds collected by the university for educational purposes no longer be accessible without restriction for the support of intercollegiate athletic programs. In my opinion, then, Act 366 is flatly inconsistent with the suggestion that a university board can divert to athletic uses any or all of the tuition portion of already collected unrestricted educational and general funds simply by redesignating such funds and then announcing the fact of the redesignation to the student body.
As noted above, A.C.A. § 6-62-804(b) authorizes a board of trustees to impose an athletic fee only in conjunction with full disclosure of the fee "in all publications and institutional board minutes as being for the support of intercollegiate athletics, separate and distinct from other tuition or student activity fees." I believe the passage just quoted reflects a legislative commitment to unvarnished openness and transparency regarding the extent to which students will be involuntarily charged with financing intercollegiate athletics. In my opinion, the ASU Board's proposed course of action would flout this spirit of disclosure and exceed the Board's authority as set forth in the above described statutes.
Having offered this opinion, I feel obliged to discuss a possible constitutional objection both to the apparent breadth of the restriction set forth at A.C.A. § 6-62-803 and to the conditions for imposing an athletic fee set forth at A.C.A. § 6-62-804. Specifically, a critic might argue that any legislative interference with a university's use of tuition funds and its imposition of fees would constitute a violation of Ark. Const. amend. 33, § 2, which provides, inter alia, that the "powers vested" in the board of an institution of higher learning cannot "be transferred, unless the institution is abolished or consolidated with some other State institution." At the heart of this argument lies a contention that the power to apply tuition and to impose athletic fees is one that has "vested" in the ASU board and consequently cannot be modified by legislative action.
I am enclosing for your information Ark. Op. Att'y Gen. No. 2000-007, in which I addressed whether the legislature, as opposed to the University of Arkansas Board of Trustees, had the power to dictate the venue of certain Arkansas Razorbacks football games. In my previous opinion, I initially quoted Hooker v. Parkin, 235 Ark. 218, 221, 357 S.W.2d 534
(1962) for the proposition that "`the Legislature (which is made up of the people's elected representatives and spokesmen) has absolute power and authority to legislate in all fields unless prohibited or restricted from doing so by the State Constitution or unless authority to so act has been delegated to the Federal Government and such authority has been exercised by the Federal Government.'" In the absence of clear guidance from the Arkansas Supreme Court, I then opined that several hallmarks of the fact that a power has "vested" in a university board are (1) that the board has traditionally exercised the power and (2) that the power involves the making of substantive policy.
With respect to the first of these factors, I am struck by the fact that A.C.A. §§ 6-62-803 and -804 were enacted in 1991. Assuming, as seems likely, that ASU has been operating in accordance with these statutes for over a decade, I do not believe a finder of fact would conclude that the ASU board has traditionally exercised independence in restricting the use of tuition to support athletics or in dictating procedures for imposing athletic fees.
Moreover, I find it significant that the Arkansas Code contains numerous apparently unchallenged restrictions on the rate and uses of tuition and fees in institutions of higher education. See, e.g., A.C.A. §§6-53-203(a)(6) (charging the Arkansas Higher Education Coordinating Board with the power and duty to determine minimum tuition and fees in two-year colleges); 6-53-207(d) (dictating that capital outlay expenses be paid from tuition, inter alia, in such institutions); 6-53-304 and 6-61-523
(dictating that tuition "be maintained at a reasonable level" at technical and community colleges); 6-61-523(a)(3) (dictating that certain community-college fees and tuition "shall be used for educational purposes only"); 6-64-408(c) (dictating that University of Arkansas Medical School tuition be used only for the benefit of the Medical Department of the University of Arkansas); 6-65-212(a) (dictating free tuition at ASU Beebe); 6-66-107 (dictating various fees and free in-state tuition at Henderson State University); 6-67-109 (dictating that tuition at the University of Central Arkansas be free for in-state residents);6-82-103(a) (providing that the board of trustees of any institution of higher learning may waive the out-of-state portion of any full tuition scholarship which is provided by unrestricted funds for any full-time student); 19-5-1076 (mandating an out-of-state tuition waiver for certain categories of students); 20-13-509 (mandating that certain student workers at the University of Arkansas College of Pharmacy be afforded tuition credits). These statutes are merely illustrative of the legislature's historical regulation of tuition to the extent it chooses at institutions of higher learning. The restrictions set forth at A.C.A. §§ 6-62-803 and -804 clearly appear to fall within this category of traditional practice.
With respect to the second significant factor in determining whether a power has "vested" in a university board — viz., whether the power involves the making of substantive policy — I offered the following in Opinion No. 2000-007:
 The Legislature has been fairly consistent in recognizing that while it retains control over appropriations, administrative and budgetary matters, Amendment 33 insulates covered boards from legislative interference in matters of policy. See, e.g., A.C.A. § 12-27-105(1)(A); A.C.A. § 25-10-111(c)(1); A.C.A. § 25-10-104(d)(1); and A.C.A. § 25-10-402; but see A.C.A. § 6-61-201 et seq. (investing the Arkansas Higher Education Coordinating Board with specified decision-making powers in matters of higher education).
Among the powers that the legislature has delegated to the Arkansas Higher Education Coordinating Board is the setting of student fees in institutions of higher learning. A.C.A. § 6-61-215; see Hein v. ArkansasState University, 972 F. Supp. 1175, 1182 (1997) (applying this statute to the setting of tuition rates). Although at some point control over "budgetary matters" by the legislature or its designee would doubtless implicate the somewhat nebulous category of "substantive policy,"[2]
there appears to be a consensus among the legislature and the state's various public institutions of higher learning that the legislature has discretion, either directly or through a delegee agency, to condition a particular institution's use of its funds, regardless of whether these funds stem from legislative appropriation or tuition, so long as the condition does not compromise the institution's qualified autonomy in setting fundamental educational policy.[3] In my opinion, then, a court would not find A.C.A. §§ 6-62-803 and -804 objectionable on constitutional grounds.
Question 2: If the answer to question #1 is "yes," does thereclassification and transfer to the athletic fund violate A.C.A. §6-62-803 or any other statutory or legal restrictions?
Given my response to your first question, this question is moot.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure
[1] The Code at no point specifies what revenues comprise the "unrestricted educational and general fund." However, in Appendix B to its regulations dictating the reporting of expenditures by department, the Arkansas Department of Higher Education offers the following definition of the term "current funds educational and general expenses":
 These expenditures represent the costs incurred for goods and services used in the conduct of an institution's operations, and include unrestricted and restricted educational and general expenditures for the support of academic programs.
The regulation further defines as follows the term "unrestricted educational and general expenditures":
 Operating expenditures allocated to the department budget for any purpose deemed necessary by the institution's management. This category includes all "designated funds" (unrestricted funds that may be used only for those purposes designated by the institution's governing board).
In its instructions for reporting revenues by department, the Arkansas Department of Higher Education defines as follows the term "unrestricted educational and general revenues":
 Revenues that may be used for any purpose deemed necessary by the institution's management. This category includes all "designated funds" (unrestricted funds that may be used only for those purposes designated by the institution's governing board).
Although these regulations fail to specify the components of the fund, ADHE's reporting forms clearly reflect that unrestricted educational and general revenues include both state assistance and student tuition. See,e.g., Revenues from ADHE Series 17-1; Expenditures from ADHE Series17-7a; see also Fact Book: Arkansas Public Higher Education at 82 (Table 32) (ADHE 2001).
[2] For instance, simply refusing to fund operations might threaten the very survival of a public university, thus violating Amendment 33's proscription against abolishing a covered entity.
[3] I use the term "qualified" in this sentence because the Higher Education Coordinating Board has been invested with considerable policy-making authority over higher education pursuant to A.C.A. §6-61-201 et seq. The Arkansas Supreme Court has not yet found occasion to test that authority in light of Amendment 33.