The Honorable Phillip Jackson State Representative 4015 Highway 143 Berryville, AR 72616-4691
Dear Representative Jackson:
I am writing in response to your request for my opinion regarding the following question:
 Can a City hold an election that would change a previous County wide election?
You recite the following background facts as having prompted this request:
 In May of 1992 Carroll County voters approved a 9-1-1 emergency telephone system. The system is funded by a 5% basic telephone tariff rate.
 In November 2005 the citizens of Eureka Springs only held an election and voted to redirect a portion of the funds being collected as a result of the 1992 election to the city of Eureka [Springs] rather than Carroll County.
You have attached to your request both the quorum-court approved ballot title upon which the Carroll County electors voted in November 1992 and the ballot title upon which the Eureka Springs electors voted in November 2005.
RESPONSE
In my opinion, the answer to this question is "no." Nothing in the Arkansas Code or Constitution suggests that one political subdivision can by election modify the results of an authorized election conducted by another political subdivision. Moreover, specifically with respect to elections related to the provision of 911 emergency services, the authorizing legislation does not provide for an election by any group of voters to abolish or to modify an existing tax. See A.C.A. § 12-10-319 (Repl. 2003) (locating in the governing body of the political subdivision the authority to adjust the tax rate up to the voter-approved ceiling). Although the City of Eureka Springs might under the applicable statutes initiate its own 911 service, it cannot in doing so relieve itself of the obligation to support the county-wide 911 service approved by the county voters.
The Arkansas Code provides for the taxpayers of any political subdivision, including a county or a city, to approve the imposition of a tax to fund 911 services, subject to the possible reduction or suspension of the tax by the political subdivision served by the 911 system. Section 12-10-318 of the Code (Supp. 2005) provides in pertinent part:
 (a)(1)(A) When so authorized by a majority of the persons voting within the political subdivision in accordance with the law, the governing authority of each political subdivision may levy an emergency telephone service charge in the amount assessed by the political subdivision on a per access line basis as of January 1, 1997, or the amount up to five percent (5%) of the tariff rate, except that any political subdivision with a population of fewer than twenty-seven thousand five hundred (27,500) according to the 1990 Federal Decennial Census may, by a majority vote of the electors voting on the issue, levy an emergency telephone charge in an amount assessed by the political subdivision on a per access line basis as of January 1, 1997, or an amount up to twelve percent (12%) of the tariff rate.
 (B) The governing authority of a political subdivision that has been authorized under subdivision (a)(1)(A) of this section to levy an emergency telephone service charge in an amount up to twelve percent (12%) of the tariff rate may decrease the percentage rate to not less than four percent (4%) of the tariff rate for those telephone service users that are served by a telephone company with fewer than two hundred (200) access lines in this state as of the date of the election conducted under subdivision (a)(1)(A) of this section.
 (2) The governing authority of the political subdivision may, upon its own initiative, call such a special election.
Section 12-10-319 (Repl. 2003) further provides as follows for the reduction or suspension of voter-approved emergency telephone service charges:
 (a)(1) If the proceeds generated by an emergency telephone service charge exceed the amount of moneys necessary to fund the 911 telephone system and 911 public safety communications center, including, without limitation, debt service on bonds issued under § 12-10-321, maintenance, operations, depreciation, and obsolescence, the governing authority shall, by ordinance, reduce the service charge rate to an amount necessary for adequate funding.
 (2) In lieu of reducing the service charge rate, the governing authority of the political subdivision may suspend such service charge if the revenue generated therefrom exceeds the necessary funding level.
 (b)(1) By ordinance, the governing authority of the political subdivision may reestablish or raise to a level not to exceed the original emergency telephone service charge rate, or lift the suspension thereof, if the amount of moneys generated is less than the amount necessary for adequate funding.
 (2) Notwithstanding this section, the political subdivision may, in the ordinance referred to in § 12-10-321 or other ordinance, warrant that, so long as bonds issued pursuant to § 12-10-321 are outstanding, emergency telephone service charges shall be maintained at such levels as may be required by or pursuant to the ordinance authorizing such bonds.
The ballot title adopted pursuant to Carroll County Ordinance 92-4 enabled county electors to vote "For 9-1-1, Emergency Telephone System within Carroll County to be funded by a charge of up to 5% of the basic telephone tariff rate approved by the Arkansas Public Service Commission[.]" The ballot title of the measure subsequently approved by the voters in the City of Eureka Springs read as follows:
 This measure will permit the continued charge of up to 5% of the basic telephone tariff rate approved by the Arkansas Public Service Commission for the purpose of funding an Enhanced 9-1-1 Public Safety Communications Center within the City of Eureka Springs, the charge provided for in this measure will replace and be in lieu of the charge of up to 5% for a 9-1-1 Emergency Telephone System that was approved by the electors of Carroll County, Arkansas on November 3, 1992.
The measure approved read as follows:
 FOR Enhanced 9-1-1 Public Safety Communications Center within the City of Eureka Springs, Arkansas to be funded by a charge of up to 5% of the basic tariff rate approved by the Arkansas Public Service Commission, which charge shall be in lieu of the charge that was approved by the electors of Carroll County on November 3, 1992, as it applies to the residents of Eureka Springs, Arkansas.
In my opinion, a reviewing court would in all likelihood conclude that the November 2005 election conducted in Eureka Springs was unauthorized and that its results should consequently be considered a nullity. The Eureka Springs ballot purports to authorize the voters of Eureka Springs to nullify as to them a tax that had previously been approved by all of the county's voters. In my opinion, the Eureka Springs voters lacked the authority independently to modify a county-wide tax that had been referred to all of the county's voter's by quorum court ordinance. Any repeal of this county-wide tax must be undertaken, if at all, by the quorum court observing the statutory procedure set forth in A.C.A. § 12-10-319. The pertinent legislation clearly contemplates that the tax will continue to be imposed indefinitely, subject to the condition that the governing body of the political subdivision that enacted the tax may adjust its level to meet 911 service needs up to the ceiling amount approved by the voters in the initial election. It would appear, then, that while the voters of Eureka Springs might approve the provision of city-wide 911 service, they cannot in the process abrogate their responsibility to support the county-wide 911 service approved by the county's voters in November 1992.
In Ark. Op. Att'y Gen. No. 2004-223, I offered the following summary of the principles that apply in determining when and how a particular tax might be repealed:
 If a tax has been authorized by law and dedicated to a particular purpose, the taxing entity that is responsible for collecting the tax and dispersing the proceeds does not have the authority to simply stop doing so, or to use the tax proceeds for a purpose other than that for which it was levied. Such action is expressly prohibited by Article 16, § 11 of the Arkansas Constitution. The receipt of tax proceeds is not generally a matter of the choice of the entities for whose benefit the tax was levied; rather, it is a matter of law. In order for the payment of the tax proceeds to the Medical Center to stop, the tax must be repealed, or must be re-levied for another purpose. This must be done in accordance with the procedures that are required by law. See Hooker v. Parkin, 235 Ark. 218, 357 S.W.2d 534 (1962); Ops. Att'y Gen. Nos. 2004-033, n. 1; 2003-146; 99-424; 97-146. In order to determine the required procedures for the repeal or re-levy of that tax, it will be necessary to consult the statutory scheme under the authority of which the tax in question was levied.
As this passage suggests, the operative inquiry must be whether any provision of statutory or constitutional law would warrant suspending, reducing or abolishing an existing tax for the provision of 911 services. In the present case, A.C.A. §12-10-318 is unambiguous in affording the voters of any given political subdivision the power to impose such a tax for the provision of 911 services. However, A.C.A. § 12-10-319 is equally unambiguous in declaring that any adjustments in this tax up to the ceiling level authorized by the voters must be made by the political subdivision's governing body. Compare my predecessor's analysis of repealing sale and use taxes in Ark. Op. Att'y Gen. No. 2001-263 ("[T]he Code provides that any abolition of a voter-approved sales or use tax must be undertaken observing the same procedures as those observed in initially approving the tax. A.C.A. §§ 26-75-210(a) and 26-75-310(a), referencing the procedures for adoption set forth at A.C.A. §§26-75-208 and 26-75-308.") It would appear to follow, then, that although the voters of Eureka Springs were authorized to impose an exclusively municipal 911 tax, they lacked authority to do so "in lieu of the charge that was approved by the electors of Carroll County on November 3, 1992," as the measure purports to do. In my opinion, the citizens of Eureka Springs remain obligated to the county pursuant to the election conducted on November 3, 1992.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh