The Honorable Eric Harris State Representative Post Office Box 7602 Springdale, AR 72766-7602
Dear Representative Harris:
I am writing in response to your request for my opinion on the following two questions:
 1. What are the constitutional issues under Amendment 33 or other provisions of the Arkansas Constitution related to HB2697 of 2005?
 2. Are there any other legal issues related to HB2697 of 2005 of which I should be advised?
You recite the following background facts:
 Last session, I filed HB2697 of 2005, which was a bill that addressed the issue of steadily increasing tuition costs by providing for tuition freezes for students that locks in the tuition rate at the rate that the student was charged at the time that the students first enrolled in the qualifying institution. Amendment 33 issues were raised in regard to this bill last session upon which I am seeking your opinion, as I am considering filing the bill in the upcoming 2007 legislative session.
 RESPONSE
With respect to your first question, I believe the fundamental constitutional issue regarding HB2697 of 2005 is whether the legislature's freezing of tuition at *Page 2 
freshman-year rates for students in any public institution of higher learning would encroach on a power "vested" in that institution's board, thus violating the provisions of Amendment 33. For reasons discussed in detail below, I am unable to opine definitively whether HB2697 would be deemed constitutional in the wake of such an inquiry. My uncertainty on this score is based in part on problems of construction arising from Amendment 33 itself. It is unclear whether the power must have been "vested" as of the date of Amendment 33's adoption or whether the power might have "vested" subsequently. It is further unclear what it means for a power to "vest," although one of my predecessors has plausibly speculated it would suffice (1) if the board has traditionally exercised the power and (2) if the power involves the making of substantive policy. Finally, assuming that setting tuition policy is a power within the contemplation of Amendment 33 — a proposition that is far from settled — I question whether it would be appropriate for the legislature to enact a blanket policy applicable to all institutions of higher learning, since Amendment 33 requires a case-by-case analysis regarding whether a power falling within its ambit has "vested" in an institutional board. However, I will note that, as a matter of historical and legislative fact, the legislature has traditionally exercised considerable power over matters involving tuition in public institutions of higher learning.
I believe the answer to your second question is "no."
Question 1: What are the constitutional issues under Amendment 33 orother provisions of the Arkansas Constitution related to HB2697 of2005?
HB2697 of 2005 reads as follows:
 State of Arkansas
 85th General Assembly A Bill
 Regular Session, 2005 HOUSE BILL 2697
 By: Representative Harris
 For An Act To Be Entitled AN ACT TO PROTECT COLLEGE STUDENTS FROM INCREASED TUITION COSTS PRIOR TO GRADUATION; AND FOR OTHER PURPOSES. *Page 3 Subtitle AN ACT TO PROTECT COLLEGE STUDENTS FROM INCREASED TUITION COSTS PRIOR TO GRADUATION. BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. Arkansas Code Title 6, Chapter 82, Subchapter 1 is amended to add an additional section to read as follows:
 6-82-105. Tuition freeze.
 (a) For purposes of this section:
 (1) "Qualifying institution" means a public institution of higher education in Arkansas; and
 (2) "Qualifying student" means an undergraduate student enrolling in a qualifying institution after the 2005-2006 school year.
 (b) Except as provided in subsection (c) of this section, during the four (4) continuous academic years next following a qualifying student's initial enrollment at a qualifying institution, the tuition charged to a qualifying student shall not exceed the amount that the qualifying student was charged at the time he or she first enrolled in the qualifying institution.
 (c)(1) The tuition charged to a qualifying student enrolled in a degree program that requires more than four (4) years to complete shall not exceed the amount that was charged at the time the qualifying student first enrolled in the qualifying institution for the customary time required to complete the degree program.
 (2) The customary time required to complete a degree program shall be defined by the qualifying institution offering the degree program.
 (3) If the qualifying student changes majors during the time period referred to in subsections (b) or (c) of this section, the tuition charged to the qualifying student shall equal the amount the qualifying student would have been assessed had the qualifying student been admitted to the changed major program when the qualifying student first enrolled in the qualifying institution.
 (d) Only technical colleges, community colleges, universities, or other institutions of higher education that implement the provisions *Page 4 
of this act may be approved by the Arkansas Higher Education Coordinating Board to receive funding from the Academic Challenge Scholarship program or the Arkansas Governor's Distinguished Scholarship program.
Before addressing the relationship between this bill and Ark. Const. amend. 33, I should stress what I take to be the bill's clear meaning. Subsections (b) and (c) are unequivocal in declaring that a qualifying student "shall" be entitled to have his tuition frozen throughout his first four years of attendance or, under certain specified circumstances, longer. I read this language as a command to any qualifying institution to freeze tuition as specified for qualifying students. In my opinion, subsection (d) does no more than specify what will be the consequences for a qualifying institution if it flouts the legislature's mandate in this regard. In my opinion, then, the proposed bill is not intended to offer a qualifying institution a choice — namely, either elect to observe the tuition-freeze policy or elect to sacrifice the funds specified in subsection (d). Rather, the bill appears intended to mandate a tuition-freeze policy, the violation of which will result in the sanctions set forth in subsection (d). Although from one perspective this may seem like a distinction without a difference, inasmuch as the sanctions will apply irrespective of whether a noncomplying institution is deemed to have elected them or whether the state is deemed to have imposed them for a violation of law, the distinction may matter in how I frame the constitutional question. For purposes of an Amendment 33 analysis, the issue does not appear to be whether the state can offer institutions a choice regarding access to state funding; rather, it is whether the state may in blanket fashion dictate tuition policy to institutions of higher learning, irrespective of whether individual institutions have traditionally handled tuition matters themselves.
As your request suggests, the question just posed clearly implicates the provisions of Amendment 33, which provides in pertinent part:
 § 2. Abolition or transfer of powers of board or commission — Restrictions.
 The board or commission of any institution, governed by this amendment, shall not be abolished nor shall the powers vested in any such board or commission be transferred, unless the institution is abolished or consolidated with some other State institution. . . . *Page 5 
The effective date of Amendment 33 was January 15, 1943.
As suggested above, it is unclear from this provision whether the reference to "powers vested" is to those vested as of the effective date of Amendment 33 or to powers "vested" at any point in time. Without elaborately discussing the issue, one of my predecessors assumed the latter to be the case, see the attached Ark. Ops. Att'y Gen. Nos.2002-119 and 2000-107 — a conclusion I consider quite plausible, if not inevitable. The purpose underlying the above quoted provision appears to be to insulate from legislative intrusion substantive powers that by practice and tradition have been exercised by the institutions covered by Amendment 33. In Opinion No. 2000-107, after noting the complete absence of case law addressing this issue, my predecessor opined that a power might be deemed to have "vested" in a university board (1) if the board has traditionally exercised the power and (2) if the power involves the making of substantive policy. While I must stress again that this standard has not been judicially adopted, I find it consistent with the ordinary-language sense of the term "vest" and with Amendment 33's focus on preserving established institutional prerogatives whose exercise advances the institution's mission. Although the issue would benefit from judicial clarification, I further believe that such prerogatives might be established at any point in time and that it would be strained to suggest that Amendment 33 was intended to cut off the evolution of institutional authority at an arbitrary point in time — namely, the amendment's effective date.
The further question remains whether it would be appropriate for the General Assembly to enact legislation restricting tuition increases that would be generally applicable to all institutions of higher learning, which is what your proposed bill would do. To my mind, the answer to this question would be "no" if freezing tuition amounted to the exercise of a power covered by Amendment 33, which on its face appears to require an institution-by-institution analysis of whether a power falling within its scope has vested in the institution's board.
In addition, as noted above, although the courts have not directly addressed the issue, I believe a power covered by Amendment 33 is in all likelihood one that involves the implementation of substantive policy as distinct from the implementation of less fundamental aspects of operations. In the ensuing discussion, I will address the somewhat perplexing question of whether making decisions regarding tuition falls within this category. *Page 6 
I am enclosing for your information Ark. Op. Att'y Gen. No. 2000-007, in which one of my predecessors addressed whether the legislature, as opposed to the University of Arkansas Board of Trustees, had the power to dictate the venues of certain Arkansas Razorbacks football games. In the referenced opinion, my predecessor initially quoted Hooker v.Parkin, 235 Ark. 218, 221, 357 S.W.2d 534 (1962) for the proposition that "`the Legislature (which is made up of the people's elected representatives and spokesmen) has absolute power and authority to legislate in all fields unless prohibited or restricted from doing so by the State Constitution or unless authority to so act has been delegated to the Federal Government and such authority has been exercised by the Federal Government.'" However, my predecessor further observed that Amendment 33 might indeed foreclose the exercise of legislative power over an institution of higher learning if that power had already "vested" in the institution's board. In the absence of clear guidance from the Arkansas Supreme Court, my predecessor then proposed the two-part test set forth above for determining whether a power has "vested" in a university board — namely, establishing (1) whether the board has traditionally exercised the power and (2) whether the power involves the making of substantive policy. Applying these principles, my predecessor opined that the University of Arkansas Board of Trustees quite likely had the sole authority to determine the venues of Arkansas Razorbacks football games.
Specifically with respect to the issue of setting tuition policy, as one of my predecessors noted in Ark. Op. Att'y Gen. No. 2002-119, which dealt with tuition at Arkansas State University:
 [A] critic might argue that any legislative interference with a university's use of tuition funds and its imposition of fees would constitute a violation of Ark. Const. amend. 33, § 2, which provides, inter alia, that the "powers vested" in the board of an institution of higher learning cannot "be transferred, unless the institution is abolished or consolidated with some other State institution." At the heart of this argument lies a contention that the power to apply tuition and to impose athletic fees is one that has "vested" in the ASU board and consequently cannot be modified by legislative action.
At issue in Opinion No. 2002-119 was whether the ASU board had traditionally exercised independence in restricting the use of tuition to support athletics or in dictating procedures for imposing athletic fees. My predecessor opined that the *Page 7 
university had acceded to the legislature's authority for a period exceeding a decade, supporting the conclusion that the board had not traditionally exercised power in these areas. He further pointed out that a number of unchallenged Arkansas statutes imposed various restrictions on the rate and uses of tuition and fees in institutions of higher learning. See, e.g., A.C.A. §§ 6-53-203(a)(6) (charging the Arkansas Higher Education Coordinating Board with the power and duty to determine minimum tuition and fees in two-year colleges); 6-53-207(d) (dictating that capital outlay expenses be paid from tuition, interalia, in such institutions); 6-53-304 and 6-61-523 (dictating that tuition "be maintained at a reasonable level" at technical and community colleges); 6-61-523(a)(3) (dictating that certain community-college fees and tuition "shall be used for educational purposes only"); 6-64-408(c) (dictating that University of Arkansas Medical School tuition be used only for the benefit of the Medical Department of the University of Arkansas); 6-82-103(a) (providing that the board of trustees of any institution of higher learning may waive the out-of-state portion of any full tuition scholarship which is provided by unrestricted funds for any full-time student); 19-5-1076 (mandating an out-of-state tuition waiver for certain categories of students); 20-13-509 (mandating that certain student workers at the University of Arkansas College of Pharmacy be afforded tuition credits).
To be sure, various statutes invest in an institution's board the authority to establish tuition policy. See, e.g., A.C.A. §§ 6-65-212(a) (investing in the board the power to set tuition at ASU Beebe);6-64-408(a) (investing in the board the power to set reasonable tuition rates at the University of Arkansas). However, these statutes are couched in terms of a grant of authority, not a recognition of a constitutionally mandated discretion in the board. Inasmuch as these statutes have not been challenged, they might be read as validating the legislature's historical regulation of tuition to the extent it chooses at institutions of higher learning. In light of the foregoing, my predecessor concluded that ASU would have to comply with legislative restrictions on the use of tuition revenues.
As regards the second part of the inquiry to determine whether a policy-making right has "vested" in a board — viz., establishing whether the power involves substantive institutional policy — my predecessor opined in Opinion No. 2000-007:
 The Legislature has been fairly consistent in recognizing that while it retains control over appropriations, administrative and budgetary matters, Amendment 33 insulates covered boards from legislative *Page 8 
interference in matters of policy. See, e.g., A.C.A. § 12-27-105(1)(A); A.C.A. § 25-10-111(c)(1); A.C.A. § 25-10-104(d)(1); and A.C.A. § 25-10-402; but see A.C.A. § 6-61-201 et seq. (investing the Arkansas Higher Education Coordinating Board with specified decision-making powers in matters of higher education).
In Opinion No. 2002-119, my predecessor further opined:
 Among the powers that the legislature has delegated to the Arkansas Higher Education Coordinating Board is the setting of student fees in institutions of higher learning. A.C.A. § 6-61-215; see Hein v. Arkansas State University, 972 F. Supp. 1175, 1182 [sic: 1183] (1997) (applying this statute to the setting of tuition rates). Although at some point control over "budgetary matters" by the legislature or its designee would doubtless implicate the somewhat nebulous category of "substantive policy,"[1] there appears to be a consensus among the legislature and the state's various public institutions of higher learning that the legislature has discretion, either directly or through a delegee agency, to condition a particular institution's use of its funds, regardless of whether these funds stem from legislative appropriation or tuition, so long as the condition does not compromise the institution's qualified autonomy in setting fundamental educational policy.[2]
I fully concur with this analysis as regards an institution's use of its funds, which was at issue in Opinion No. 2002-119. Moreover, as reflected in my predecessor's reference to Hein,[3] there likewise appears to be a consensus that the legislature has at least a qualified control over the setting of tuition rates, although it is far from clear that such control would support imposing a blanket tuition freeze of the sort *Page 9 
contemplated in your proposed bill. My predecessor's opinion was crucially qualified in that he was addressing only legislative mandates regarding "a particular institution's" activities. Implicit in his analysis, it seems to me, was a recognition that legislative conditioning of an institution's policies regarding such matters as tuition might at some point encroach upon that institution's established authority to chart its own educational course. Whether such authority is, in fact, "established" for Amendment 33 purposes may well depend upon a particular set of facts with respect to each institution. Moreover, whether a blanket tuition freeze of the sort you propose would constitute a salutary instance of legislative concern for student welfare or, alternatively, a dire threat to an institution's core functions may likewise depend upon a particular set of facts with respect to each institution. In my opinion, a reviewing court might conclude that a blanket tuition freeze of the sort you contemplate is impermissible in that it might undermine the fundamental operations of individual institutions of higher learning whose prerogatives in this area have "vested" in the sense contemplated in Amendment 33. However, given the manifold uncertainties discussed above, I am not inclined formally to opine to this effect. I can do no more than point out that the pertinent law is undeveloped and unclear on this point. Legislative or judicial clarification appears warranted.
Question 2: Are there any other legal issues related to HB2697 of 2005of which I should be advised?
Assuming you are referring to "other legal issues" that might render HB2697 of 2005 facially unconstitutional, I believe the answer to your question is "no."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] For instance, simply refusing to fund operations might threaten the very survival of a public university, thus violating Amendment 33's proscription against abolishing a covered entity.
[2] I use the term "qualified" in this sentence because the Higher Education Coordinating Board has been invested with considerable policy-making authority over higher education pursuant to A.C.A. §6-61-201 et seq. The Arkansas Supreme Court has not yet found occasion to test that authority in light of Amendment 33.
[3] In Hein, the court based its analysis on the proposition that pursuant to A.C.A. § 6-61-215, "the Arkansas Department of Higher Education is the agency responsible for determining tuition rates for in-state and out-of-state students." 972 F.Supp. at 1183.